| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Tamar Terzian, Esq.**      SBN 254148<br>**Terzian Law Group**<br>**315 West Arden Avenue Suite 28**<br>**Glendale, CA 91203**<br>**(818) 242-1100 Fax: (818) 242-1012**<br><br>tezian@kingobk.com<br><br><br>☐ Individual appearing without attorney<br>☒ Attorney for: Debtor | |

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA -LOS ANGELES DIVISION

| In re:<br><br>    **Hourig Tartarian**<br><br><br><br><br>                                    Debtor(s). | CASE NO.: **2:14-bk-29929-NB**<br>CHAPTER: **13** |
|---|---|
| | **DEBTOR'S NOTICE OF MOTION AND**<br>**MOTION TO AVOID JUNIOR LIEN ON**<br>**PRINCIPAL RESIDENCE**<br>**[11 U.S.C. § 506(d)]** |
| | DATE:  **March 26, 2015**<br>TIME:  **8:30 a.m.**<br>COURTROOM:  **1545** |

1. TO:  <u>Hon. Neil Bason, Kathy Dockery, Chapter 13 Trustee, PNC Mortgage and all other interested parties</u>

2. NOTICE IS HEREBY GIVEN that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an order granting the relief set forth in the motion and accompanying supporting documents served and filed herewith.

3. **Hearing Location:**
   ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

4. **Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one. *(If you do not have an attorney, you may wish to consult one.)*

5. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than 14 days prior to the above hearing date. If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

6. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according the judge's self-calendaring procedures.

Date: 3/4/15

**Terzian Law Group**
Printed name of law firm *(if applicable)*

**Tamar Terzian**
Printed name of Debtor or attorney for Debtor

Signature of Debtor or attorney for Debtor

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506(d)]**
**(DEBTOR:      Hourig Tartarian      )**

**NAME OF CREDITOR HOLDING JUNIOR LIEN ("Respondent"):**  PNC Mortgage

**1. Property at Issue:** Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (Lien) encumbering the following real property (Property), which is the principal residence of debtor.

       Street address:  **1421 Valencia Avenue**
       Unit number: _____
       City, state, zip code:  **Pasadena, CA 91104**

Legal description of Property for document recording number *(including county of recording)*:
  **Lot 84 of Tract No. 6433, in the County of Los Angeles, State of California, as per Map recorded in Book 104, Page 20 of Maps, in the Office of the County Recorder of said County.**

☐ See attached page for legal description of Property or document recording number.

**2. Case History:**
    a. A voluntary petition under chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on *(specify petition date)*:  **October 21, 2014.**
    b. ☐ An Order of Conversion to chapter 13 was entered on *(specify date)*: _____

**3. Grounds for Avoidance of Junior Lien:**

    a. As of *(date of title review)*  **January 20, 2015** , the Property is subject to the following liens in the amounts specified securing the debt against the Property, that the Debtor seeks to have treated as indicated:

        (1) *(Name of holder of 1st lien)*  **PNC Mortgage, a division of PNC Bank, N.A.** in the amount of $ **650,632.01** .

        (2) *(Name of holder of 2nd lien)* **PNC Mortgage, a division of PNC Bank N.A.** in the amount of $ **101,516.00** ☒ is ☐ is not to be avoided;

        (3) *(Name of holder of 3rd lien)* _____ in the amount of $ _____ ☐ is ☐ is not to be avoided;

        ☐ See attached page for additional lien(s).

    As of *(date of valuation/appraisal)*  **January 29, 2015** , Property is worth no more than *(value per valuation/appraisal)* $ **500,000.00** .

    b. As a result, Respondent's Lien encumbering the Property is wholly unsecured.

    c. **Evidence in Support of Motion:**

        (1) ☒ The amount of the lien identified in paragraph 3(a)(1) is based on *(type of evidence)* **Proof of Claim No. 8 filed on January 1, 2015** , attached hereto and identified as Exhibit **1** .

        (2) ☒ The amount of the lien identified in paragraph 3(a)(2) is based on *(type of evidence)* **Credit Report** , attached hereto and identified as Exhibit **2** .

        (3) ☐ The amount of the lien identified in paragraph 3(a)(3) is based on *(type of evidence)* _____, attached hereto and identified as Exhibit ___.

        (4) ☒ The relative priority of the liens encumbering the Property is established by evidence attached as Exhibit **3 Preliminary Title Report** .

        (5) ☒ The value of the Property from paragraph 3(b) is based on *(type of evidence)* **Appraisal Report** , attached as Exhibit **4** .

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                Page 2                        **F 4003-2.4.JR.LIEN.MOTION**

(6) ☒ Debtor submits the attached Declaration(s).

(7) ☒ Other evidence *(specify/identify supplemental evidence)*:   **Grant Deed attached as Exhibit "5"; 1st Deed of Trust attached as Exhibit "6"; and 2nd Deed of Trust**   attached as Exhibit   **7**  .

**d. WHEREFORE, Debtor prays that this court issue an order granting the this motion and establishing that:**

(1) The Property is valued at no more than*(requested value)* $ **500,000.00**           .

(2) No payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance payments are not to be made, before the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(3) Respondent's(s') claim on the junior position lien(s) shall be allowed as a nonpriority general unsecured claim(s) in the amount per the filed Proof of Claim.

(4) The avoidance of the Respondent's(s') junior lien(s) is contingent upon: Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(5) The Respondents shall retain its/their lien(s) in the junior position for the full amount due under the corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or if the Property is sold or refinanced prior to the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

(6) In the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest and extinguishes the Respondent's(s') lien rights prior to the Debtor's completion of the chapter 13 plan and receipt of a chapter 13 discharge, the Respondent's(s') lien(s) shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale, subject to the priority of any such junior lien(s).

**e.** ☐ See attached continuation page for additional provisions.

Date: 3/4/2015

Respectfully submitted,

_____
Signature of Debtor or attorney for Debtor

**Tamar Terzian**
Printed Name of Debtor or attorney for Debtor

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 3                    **F 4003-2.4.JR.LIEN.MOTION**

## DECLARATION OF HOURIG TARTARIAN

       I, HOURIG TARTARIAN, if called as a witness would and could testify to the following facts from my own personal knowledge.

       1. I am the debtor in the within case and am familiar with the facts as stated herein.

       2. I am of the opinion that my real property located at **1421 Valencia Avenue, Pasadena, CA 91104** has a market value of **$500,000.00.**

       3. The balance owed to my first trust deed holder, **PNC MORTGAGE, a division of PNC Bank, N.A..,** is approximately **$650,632.01.** This information was obtained from the Proof of Claim filed by PNC Mortgage, a division of PNC Bank, N.A. dated January 22, 2015.  A true and correct copy is attached and marked as **Exhibit "1"** in the Debtors' Motion to Avoid Junior Lien on Principal Residence.

       4. The balance owed to my Second trust deed holder, **PNC MORTGAGE, a division of PNC Bank, N.A..** is approximately **$101,516.00.** This information was obtained from the Credit Report pulled from CIN Legal Data Services dated October 17, 2014.  A true and correct copy is attached and marked as **Exhibit "2"** in the Debtors' Motion to Avoid Junior Lien on Principal Residence.

       5. I have also attached hereto a true and correct copy of the **Preliminary Title Report** showing the two recorded liens recorded against my property. A true and correct copy is attached and marked as **Exhibit "3"** in the Debtors' Motion to Avoid Junior Lien on Principal Residence.

       6. I have also attached hereto a true and correct copy of the **Grant Deed** recorded in the Official Records of the Los Angeles County Recorder's Office on July 31, 2004, bearing recordation number 2004-1775210. A true and correct copy is attached and marked as **Exhibit "5"** in the Debtors' Motion to Avoid Junior Lien on Principal Residence.

       7. I have also attached hereto a true and correct copy of the **First Deed of Trust** recorded in the Official Records of the Los Angeles County Recorder's Office on May 31, 2007,  bearing recordation number 2007-1314107. A true and correct copy is attached and marked as **Exhibit "6"** in the Debtors' Motion to Avoid Junior

Lien on Principal Residence.

8. I have also attached hereto a true and correct copy of the **Second Deed of Trust** recorded in the Official Records of the Los Angeles County Recorder's Office on May 31, 2007, bearing recordation number 2007-1314108. A true and correct copy is attached and marked as **Exhibit "7"** in the Debtors' Motion to Avoid Junior Lien on Principal Residence.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 4th day of March 2015 at Glendale, California.

HOURIG TARTARIAN, Declarant

2

# EXHIBIT "1"

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT | Central District of California | PROOF OF CLAIM |
|---|---|---|

**Name of Debtor:**
Hourig Tartarian aka Houry Tartarian dba Re-juvenate

**Case Number:**
2:14-bk-29929-NB

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor (the person or other entity to whom the debtor owes money or property):**
J.P. Morgan Mortgage Acquisition Corp.

**COURT USE ONLY**

**Name and address where notices should be sent:**
PNC Mortgage a division of PNC Bank, N.A.
Attn: Bankruptcy
3232 Newmark Drive
Miamisburg, OH 45342
Telephone number: (866) 754-0659    email:

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
     (*If known*)

Filed on:_____

**Name and address where payment should be sent (if different from above):**
PNC Mortgage a division of PNC Bank, N.A.
Attn: Bankruptcy
3232 Newmark Drive
Miamisburg, OH 45342
Telephone number: (866) 754-0659    email:

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**        $    650,632.01

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**  MONEY LOANED
    (See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:**
    xxxxx4353

**3a. Debtor may have scheduled account as:**
_____
    (See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
    (See instruction #3b)

**4. Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
                    $  143,602.12

**Nature of property or right of setoff:** ☑Real Estate  ❏Motor Vehicle  ❏Other
**Describe:**  1421 Valencia Avenue, Pasadena, California  91104

**Basis for perfection:**  Mortgage/Deed of Trust

**Value of Property:** $  554,461.00*

**Amount of Secured Claim:** $  650,632.01

**Annual Interest Rate** 5.125 % ❏Fixed  or  ☑Variable
**(when case was filed)**

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B10 (Official Form 10) (04/13)

2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Josephine E. Salmon
Title: ATTORNEY
Company: PITE DUNCAN, LLP
Address and telephone number (if different from notice address above):
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone number: (858) 750-7600   email: jsalmon@piteduncan.com

*(Signature)*   SBN (206167)   01/22/2015 *(Date)*

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

---

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____                           _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

B 10A (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | Hourig Tartarian Hourig Tartarian aka Houry Tartarian dba Re-juvenate | **Case number:** | 2:14-bk-29929-NB |
| **Name of creditor:** | J.P. Morgan Mortgage Acquisition Corp. | **Last four digits** of any number you use to identify the debtor's account | xxxxxx4353 |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

| | | | | | | |
|---|---|---|---|---|---|---|
| 1. **Principal due** | | | | | (1) | $ 546,559.17 |

2. **Interest due**

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | | | |
|---|---|---|---|---|---|---|
| 4.75 % | 10/1/2011 | 4/30/2013 | $41,105.74 | | | |
| 5.125 % | 5/1/2013 | 10/20/2014 | $41,238.60 | | | |
| **Total interest due as of the petition date** | | | $82,344.34 | Copy total here ▶ | (2) | $82,344.34 |

| | | |
|---|---|---|
| 3. **Total principal and interest due** | (3) | $628,903.51 |

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late charges** | 2/18/14, 3/17/14 | (1) | $ 318.80 |
| 2. **Non-sufficient funds (NSF) fees** | | (2) | $ 0.00 |
| 3. **Attorney's fees** | 7/5/13 | (3) | $ 150.00 |
| 4. **Filing fees and court costs** | | (4) | $ 0.00 |
| 5. **Advertisement costs** | 9/26/14 | (5) | $ 476.38 |
| 6. **Sheriff/auctioneer fees** | | (6) | $ 0.00 |
| 7. **Title costs** | 6/17/14, 6/20/14 | (7) | $ 1,650.00 |
| 8. **Recording fees** | 6/17/14, 9/24/14 | (8) | $ 83.00 |
| 9. **Appraisal/broker's price opinion fees** | 9/30/14 | (9) | $ 110.00 |
| 10. **Property inspection fees** | 6/13/11, 6/28/11, 8/30/11, 9/28/11, 11/2/11, 12/6/11, 2/24/12, 3/28/12, 4/20/12, 5/25/12, 7/2/12, 7/20/12, 8/20/12, 11/21/12, 12/24/12, 1/18/13, 2/21/13, 3/26/13, 5/1/13, 5/22/13, 6/24/13, 7/26/13, 8/26/13, 9/30/13, 10/29/13, 11/29/13, 12/30/13, 1/29/14, 3/3/14, 3/28/14, 4/29/14, 6/2/14, 6/26/14, 7/25/14, 8/27/14, 9/29/14 | (10) | $ 375.00 |
| 11. **Tax advances (non-escrow)** | | (11) | $ 0.00 |
| 12. **Insurance advances (non-escrow)** | | (12) | $ 0.00 |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ 0.00 |
| 14. **Property preservation expenses. Specify:** | | (14) | $ 0.00 |
| 15. **Other. Specify:** Posting Fees | 9/29/14 | (15) | $ 120.00 |
| 16. **Other. Specify:** Mailing Costs | 6/24/14, 6/25/14, 7/5/14, 10/2/14 | (16) | $ 114.96 |
| 17. **Other. Specify:** | | (17) | $ 0.00 |
| 18. **Total prepetition fees, expenses, and charges. Add all of the amounts listed above.** | | (18) | $3,398.14 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes   Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1. | **Installment payments due** | Date last payment received by creditor | | | | 2/15/2013 | | | |
| | | Number of installment payments due | | | | (1) | 36 | | |
| 2. | **Amount of installment payments due** | 12 | installments | From 11/1/2011 | To 10/1/2012 | @ | $3,572.74 | = | $42,872.88 |
| | | 7 | installments | From 11/1/2012 | To 5/1/2013 | @ | $4,215.22 | = | $29,506.54 |
| | | 5 | installments | From 6/1/2013 | To 10/1/2013 | @ | $4,329.28 | = | $21,646.40 |
| | | 12 | installments | From 11/1/2013 | To 10/1/2014 | @ | $3,848.18 | = | $46,178.16 |

| | | | |
|---|---|---|---|
| | Total installment payments due as of the petition date | **$140,203.98** | Copy total here ▶ (2) $140,203.98 |
| 3. **Calculation of cure amount** | <u>Add</u> total prepetition fees, expenses, and charges | | Copy total from Part 2 here ▶ + $3,398.14 |
| | <u>Subtract</u> total of unapplied funds (funds received but not credited to account) | | - $ 0.00 |
| | <u>Subtract</u> amounts for which debtor is entitled to a refund | | - $ 0.00 |
| | Total amount necessary to cure default as of the petition date | | (3) $143,602.12 |

Copy total onto Item 4
of Proof of Claim form

Steven W. Pite *CA/NV/WA*
David E. McAllister
*AZ/CA/HI/OR/UT/WA*
Casper J. Rankin
*AZ/CA/OR/ID/WA*
Eddie R. Jimenez *CA/NV/TX*
Christopher McDermott *CA*

Josephine E. Salmon
*AK/AZ/CA/NY*
Gagan G. Vaideeswaran *CA*
Megan E. Lees *CA*

Joseph C. Delmotte *CA*
Bryan S. Fairman *CA*
Anh P. Nguyen *TX*
Philip Giles *AZ/CA*
Ace C. Van Patten *ID/NV*

Jesse Baker *OR/UT/WA*
Todd Garan *CA*
Matthew R. Clark, III
*CA/NY*
Arnold L. Graff *CA/UT/WI*

Robert P. Zahradka *CA*
Greg C. Campbell *CA*
Gina J. Kim *CA*
Justin S. Moyer *CA*
Drew A. Callahan *CA*
Jonathan C. Cahill *CA*

## PROOF OF CLAIM DISCLOSURES

IN RE: **TARTARIAN, HOURIG** *aka* **Houry Tartarian**
*dba* **Re-juvenate**
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

CASE NO. 2:14-bk-29929-NB
CREDITOR:  J.P. MORGAN MORTGAGE ACQUISITION CORP.

| First Post Petition Payment | Principal & Interest | Escrow | Total |
|---|---|---|---|
| 11/1/2014 | $3,188.07 | $602.71 | $3,790.28 |

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Pite Duncan, LLP's participation in this proceeding. Moreover, the within party does not authorize Pite Duncan, LLP, either expressly or impliedly through Pite Duncan, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.
3. *This valuation has been provided solely for the purpose of complying with the United States Bankruptcy Court's official B 10 form and is not intended to serve as Creditor's opinion of value for purposes of an 11 U.S.C. § 506(a) proceeding. This valuation was obtained from the Debtor(s) Schedule A of their bankruptcy petition. However, this valuation shall have no prejudicial effect against the Creditor and Creditor reserves the right to obtain its own independent valuation of the Property in the event the value of the Property becomes a contested issue in this bankruptcy case.

REPRESENTATION OF PRINTED DOCUMENT

**PNC MORTGAGE℠**

HOURIG TARTARIAN
1421 VALENCIA AVE
PASADENA CA  91104-2028

LOAN NUMBER: ▉▉▉▉▉▉
PREPARED:  October 31, 2014

**CUSTOMER SERVICE** ▉▉▉▉▉▉

**www.pncmortgage.com**

## Your Escrow Summary

Real Estate Settlement Procedures Act (RESPA) guidelines require us to provide you with an Annual Escrow Analysis Statement which includes all of your escrow disbursements from the previous year, as well as your estimated escrow disbursements for the upcoming year.  All of the information that is provided on your enclosed annual escrow analysis statement is regulated by RESPA and cannot be changed.  In an effort to simplify the escrow account information and monthly payment information that is calculated on the original document, we have also included this summary which will provide you with a quick snapshot of your actual escrow analysis statement.  Please note that increases or decreases in your property taxes and/or insurance premiums will result in a change in your monthly payment amount, and may result in an escrow shortage or surplus.

|  | **New Monthly Payment** | **Current Monthly Payment** |
|---|---|---|
| Payment Effective Date | November, 2014 | November, 2013 |
| **Payment Amount** | $3,790.28 | $3,572.74 |
| **Monthly Payment Breakdown** | **New Monthly Payment** | **Current Monthly Payment** |
| Principal & Interest | $3,188.07 | $3,074.01 |
| Escrow Items | $602.21 | $660.11 |
| **Escrow Surplus/Shortage Amount** | $0.00 | -$161.38 |
| **Total Monthly Payment** | $3,790.28 | $3,572.74 |
| **Monthly Escrow Collection Amount** | **New Monthly Collection Amount** | **Current Monthly Collection Amount** |
| Monthly Tax Amount | $452.96 | $456.86 |
| Monthly Insurance Amount | $149.25 | $203.25 |
| Monthly MIP/PMI Amount | $0.00 | $0.00 |
| **Monthly Surplus/Shortage Amount** | $0.00 | -$161.38 |
| **Total Monthly Escrow Amount** | $602.21 | $498.73 |
| **Annual Escrow Collection Amount** | **New Annual Collection Amount** | **Current Annual Collection Amount** |
| Annual Tax Amount | $5,435.52 | $5,482.36 |
| Annual Insurance Amount | $1,791.00 | $2,439.00 |
| Annual MIP/PMI Amount | $0.00 | $0.00 |
| **Total Annual Escrow Collection Amount** | $7,226.52 | $7,921.36 |

**Please see reverse for more information and Frequently Asked Questions about escrow analysis.**

*Why did my payment change?*

*An increase or decrease in your payment may be a result of an increase or decrease in your property taxes and / or insurance premiums and may result in an escrow shortage or surplus. An increase or decrease in your taxes may be due to a property reassessment, a change in the tax rate, a change in an exemption or a special assessment. An increase or decrease in your hazard insurance premium may be caused by a change in / or amount of your insurance coverage, or an increase in your insurance rate.*

**Can my mortgage company provide me with information concerning why there were changes in my tax payments, special assessments, or insurance premiums?**

*We apologize but your mortgage company does not have information as to why your taxes insurance or special assessments have changed. Please contact your local tax office or your insurance agent for further assistance.*

**What should I do if I receive a tax bill?**

*If you have an escrow account for taxes and the bill is for the current taxes due, we will obtain the tax bills from the tax collector. If you have an escrow account for taxes and the tax bill is for delinquent taxes due, please call us at 1-800-822-5626. If it is necessary to send a copy of your tax bill to us, please include your loan number and forward it to:*

*PNC Mortgage*
*Attn: Tax Department-B6-YM13-01-7*
*P.O. Box 1804*
*Dayton, OH 45401-1804*

- *PA, CA, VA, MD, NJ, ID, IA, ME, and CT Customers: Supplemental or special / additional assessment tax is not escrowed. You will be responsible for paying these bills.*

**What should I do if I receive an insurance renewal notice and a bill requesting payment?**

*If you have an escrow account for insurance, please forward a copy of your bill with your loan number to:*

*PNC Bank, National Association*
*ISAOA ATIMA*
*P.O. Box 7433*
*Springfield, OH 45501*

**If there is a shortage in my escrow account, what should I do?**

*You may pay the shortage in your escrow account using the coupon attached to the escrow analysis. Upon receipt of the payment of the shortage, we will adjust your payment to reflect the lower payment amount. If you choose not to pay the shortage, the shortage will be spread over the next 12 months, interest free. In either case, your payment will be adjusted to reflect the new amount. If you currently use a coupon book for remitting your payment, a new book will be sent to you within 20 days of the original escrow analysis.*

**My payment is deducted from my checking account each month, if my payment changed do I need to do anything to adjust the payment amount currently being deducted?**

*If your payment is deducted from your checking account each month, the new payment amount will automatically be deducted from your account.*

**For future reference, please note the following methods available for you to contact us:**

| **Website / Online Loan Information** | **Voice Connect / Customer Service** |
|---|---|
| **Account Access 24 hours a day – 7 days a week** | **Convenient • Toll-Free • Easy-To-Use** |
| **www.pncmortgage.com** | **1-800-822-5626** |

*Mailing Addresses:*

| **Customer Service Inquiries** | **Overnight / Express Mail Payments** |
|---|---|
| **PNC Mortgage** | **PNC Mortgage** |
| **Attn: Customer Service Research** | **Attn: Payment Processing** |
| **B6-YM07-01-7** | **1200 West 7th St., Suite L2-200** |
| **P.O. Box 1820** | **Los Angeles, CA 90017** |
| **Dayton, OH 45401-1820** | |

PNC Mortgage, a division of PNC Bank, National Association

REPRESENTATION OF PRINTED DOCUMENT



(800) 523-8654
Website: www.pncmortgage.com
Customer Service: ▉▉▉▉▉▉▉

**ESCROW ACCOUNT**
**DISCLOSURE STATEMENT**
LOAN #: ▉▉▉▉▉▉▉
DATE: **October 31, 2014**

HOURIG TARTARIAN
1421 VALENCIA AVE
PASADENA CA 91104-2028

| CURRENT MONTHLY MORTGAGE PAYMENT | |
|---|---|
| Principal & Interest | 3,074.01 |
| Escrow | 660.11 |
| Prorated Escrow Surplus | -161.38 |
| Total Payment | 3,572.74 |

➡ | NEW PAYMENT INFORMATION | |
|---|---|
| Principal & Interest | 3,188.07 |
| Escrow | 602.21 |
| **Total Payment** | **3,790.28** |
| **New Payment Effective Date** | **11/01/14** |

## COMING YEAR ESCROW PROJECTION

This statement provides a detailed summary of activity related to your escrow account. PNC Mortgage maintains your escrow account to pay such items as property taxes, insurance premiums, and mortgage insurance.

This section lists a 12-month running escrow balance to determine the appropriate target balance and to determine if a shortage or surplus exists. This is a projection of the anticipated activity in your escrow account for the coming 12 months.

| ANTICIPATED ESCROW DISBURSEMENT | | MONTH | PAYMENTS TO ESCROW | DESCRIPTION | PAYMENTS FROM ESCROW | CUR BAL PROJECTION | REQ BAL PROJECTION |
|---|---|---|---|---|---|---|---|
| COUNTY TAX | $5,435.52 | | | BEGINNING BALANCE | | 7,479.24 | 3,319.97 |
| HAZARD INS | $1,791.00 | November | 602.21 | COUNTY TAX | 2,717.76 | 5,363.69 * | 1,204.42 ** |
| | | December | 602.21 | | | 5,965.90 | 1,806.63 |
| | | January | 602.21 | | | 6,568.11 | 2,408.84 |
| | | February | 602.21 | | | 7,170.32 | 3,011.05 |
| | | March | 602.21 | | | 7,772.53 | 3,613.26 |
| TOTAL DISBURSEMENTS | $7,226.52 | April | 602.21 | COUNTY TAX | 2,717.76 | 5,656.98 | 1,497.71 |
| | | May | 602.21 | | | 6,259.19 | 2,099.92 |
| DIVIDED BY 12 MONTHS | | June | 602.21 | | | 6,861.40 | 2,702.13 |
| | | July | 602.21 | | | 7,463.61 | 3,304.34 |
| MONTHLY ESCROW DEPOSIT | $602.21 | August | 602.21 | | | 8,065.82 | 3,906.55 |
| | | September | 602.21 | | | 8,668.03 | 4,508.76 |
| | | October | 602.21 | HAZARD INS | 1,791.00 | 7,479.24 | 3,319.97 |

* The projected escrow balance at the low point.
** The lowest balance the escrow account should attain during the projected period.

| CALCULATION OF ESCROW ADJUSTMENT | |
|---|---|
| BEGINNING PROJECTED BALANCE | $7,479.24 |
| BEGINNING REQUIRED BALANCE | $3,319.97 |
| **ESCROW SURPLUS** | **$4,159.27** |

**MORE INFORMATION ON REVERSE SIDE**

**The required minimum balance allowed by federal law (RESPA) is two times your monthly escrow payment (excluding MIP/PMI), unless your mortgage document or state law specifies a lower amount.**

## IMPORTANT MESSAGES

Make your check, money order or cashier's check payable to PNC Mortgage. All Payments must be funds from a U.S. Bank Account and are subject to PNC's acceptance. **Do NOT send cash by mail.**

We understand that you have filed for bankruptcy and have not yet received a discharge. None of the information requested in this statement will be used for the collection of any debts or for purposes prohibited by the Bankruptcy Code or other applicable Federal or state law.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

INTERNET REPRINT



Your escrow account has a surplus balance of $4,159.27. Due to the past due status of your loan, these funds are being retained in your escrow account. Once your loan status is current, you may contact Customer Service about your refund.

Your projected escrow balance as of 10/31/14 is $7,479.24. Your required escrow balance, according to this analysis, should be $3,319.97. This means you have a surplus balance of $4,159.27. If a refund check was issued at the time of the analysis, the check is attached to the bottom of this form.

Once during this analysis period, your required escrow balance should be reduced to a target balance of $1,204.42 as it does in November. Under Federal law, your target balance should not exceed an amount equal to two months of escrow payments for taxes and insurance, unless your mortgage document or state law specifies a lower amount.

## Projected Activity from the Previous Analysis

This is a projection of the activity for your escrow account from the Previous Analysis. This projection was based on the disbursements anticipated to be made from your escrow account. Compare this projection to the actual escrow activity in the Account History (summarized below).

The escrow payment in this projection may not equal the escrow payment in the Account History if an adjustment was made to collect a shortage or refund a surplus.

Adjustments to the payment and differences between the anticipated and actual disbursements may prevent the actual balance from reaching the projected low escrow balance.

| Date | Description | Payments | Disbursements | Balance |
|---|---|---|---|---|
| | BEGINNING BALANCE | | | 3,401.29 |
| 11/13 | COUNTY TAX | 660.11 | 2,741.18 | 1,320.22 ** |
| 12/13 | | 660.11 | | 1,980.33 |
| 01/14 | | 660.11 | | 2,640.44 |
| 02/14 | | 660.11 | | 3,300.55 |
| 03/14 | | 660.11 | | 3,960.66 |
| 04/14 | COUNTY TAX | 660.11 | 2,741.18 | 1,879.59 |
| 05/14 | | 660.11 | | 2,539.70 |
| 06/14 | | 660.11 | | 3,199.81 |
| 07/14 | | 660.11 | | 3,859.92 |
| 08/14 | | 660.11 | | 4,520.03 |
| 09/14 | | 660.11 | | 5,180.14 |
| 10/14 | HAZARD INS | 660.11 | 2,439.00 | 3,401.25 |
| TOTAL | | 7,921.32 | 7,921.36 | |

## Account History

This is a statement of actual escrow account activity from November 2013 through October 2014. Compare it to the Projected Activity from the Previous Analysis which appears above the Account History.

Your total mortgage payment during the past year was $3,572.74 of which $3,074.01 was your Principal and Interest payment and $660.11 was your escrow payment.

| Date | Description | Payments | Disbursements | Balance |
|---|---|---|---|---|
| | BEGINNING BALANCE | | | -12,894.83 |
| 11/13 | COUNTY TAX | | 2,717.77 * | -15,612.60 |
| 03/14 | COUNTY TAX | | 2,717.76 * | -18,330.36 |
| 10/14 | HAZARD INS | | 1,791.00 * | -20,121.36 |
| 11/14 | | 27,600.60 e | | 7,479.24 |
| TOTAL | | 27,600.60 | 7,226.53 | |

* Indicates a difference from projected activity either in the amount or the date.

** Required minimum escrow balance.

"e" Indicates estimates for future payments or disbursements.

If you have any questions about this analysis statement, please visit us at www.pncmortgage.com to send us an email, write to us at PNC Mortgage; Attention: Customer Service Research; B6-YM07-01-7, PO Box 1820; Dayton, OH  45401 or call our Customer Service Department toll free number

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable after Initial Period) (45 Day Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| May 22, 2007 | GLENDALE | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

1421 VALENCIA AVENUE, PASADENA, California 91104

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 513,750.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is National City Mortgage

a division of National City Bank

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.750 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on July 1 , 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

National City Mortgage Co. P O Box 54828, Los Angeles, CA 90054-0828
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,332.18 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable after Initial Period) (45 Day Lookback)** - Single Family - Freddie Mac UNIFORM INSTRUMENT

VMP®-174N (0406)                    Form 5524 5/04
VMP Mortgage Solutions, In
Page 1 of 5                Initials: _____

The header is garbled/overlapping text.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of  June 2012  , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND 3/4THS  percentage point(s) (  2.750  %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than  11.750  % or less than  2.750  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE  percentage point(s) (  1.000  %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than  11.750  %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

VMP-174N (0406)                    Page 2 of 5                    Form 5524 5/04

Initials: HT

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      **15**      calendar days after
the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      **5.00**      %
of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain
date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest
that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by
other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the
Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid
back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses
include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by
delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note
Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class
mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different
address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this
Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also
obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or
endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under
this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of
the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.
"Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the
right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note
Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note,
protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That
Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts
I owe under this Note. Some of those conditions are described as follows:

**Form 5524 5/04**

Initials: _____

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Form 5524 5/04

Initials:

VMP®-174N (0406)

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
HOURIG TARTARIAN               -Borrower                                     -Borrower


_____ (Seal)          _____ (Seal)
                               -Borrower                                     -Borrower


PAY TO THE ORDER OF
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK
WITHOUT RECOURSE
NATIONAL CITY MORTGAGE, A DIVISION OF     (Seal)          _____ (Seal)
NATIONAL CITY BANK                 -Borrower                                     -Borrower

MELINDA JORDAN
LOAN REVIEW ADMINISTRATOR

_____ (Seal)          _____ (Seal)
                               -Borrower                                     -Borrower


PAY TO THE ORDER OF                                          [Sign Original Only]


WITHOUT RECOURSE
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK

MELINDA JORDAN
LOAN REVIEW ADMINISTRATOR



This page is part of your document - DO NOT DISCARD

Recorded/Filed in Official Records       Fee:  70.00
Recorder's Office, Los Angeles County,   Tax:  0.00
California                               Other: 0.00
                                         _____
05/31/07 AT 08:00AM                      Total: 70.00

                                         Title Company

TITLE(S) :   _____

L E A D   S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.    Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED



COMMONWEALTH LAND TITLE CO.

Recording Requested By:
GINA BLANCO

Return To:                                                    05/31/07

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

Prepared By:
GINA BLANCO

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

_____ [Space Above This Line For Recording Data] _____

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

**(A) "Security Instrument"** means this document, which is dated    May 22, 2007
together with all Riders to this document.
**(B) "Borrower"** is

HOURIG TARTARIAN An Unmarried Woman

Borrower's address is   1421 VALENCIA AVENUE PASADENA, California 91104
. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is National City Mortgage a division of
National City Bank
Lender is a   National Banking Association
organized and existing under the laws of   United States

CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01

-6(CA) (0207)
Page 1 of 15                      Initials:
VMP MORTGAGE FORMS      

*3*

Lender's address is
**3232 NEWMARK DRIVE, MIAMISBURG, OH  45342**
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is   **NATIONAL CITY BANK**

(E) "Note" means the promissory note signed by Borrower and dated   **May 22, 2007**
The Note states that Borrower owes Lender
**FIVE HUNDRED THIRTEEN THOUSAND SEVEN HUNDRED FIFTY & 00/100**                 Dollars
(U.S. $     **513,750.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than     **June 1, 2037**   .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

-6(CA) (0207)                              Page 2 of 15                Initials: HT                Form 3005  1/01



4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.
(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and
modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to
Trustee, in trust, with power of sale, the following described property located in the
**County**                                    of          **Los Angeles**                                :
[Type of Recording Jurisdiction]                         [Name of Recording Jurisdiction]


**SEE ATTACHED LEGAL DESCRIPTION**


SEE EXHIBIT A


Parcel ID Number: ▮▮▮▮▮▮▮                              which currently has the address of
   **1421 VALENCIA AVENUE,**                                                      [Street]
   **PASADENA**                              [City] , California    **91104**    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also
be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the
"Property."
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has
the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of
record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items
pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

⬤-6(CA) (0207)                       Page 3 of 15            Initials: ___        Form 3005  1/01



$\varsigma$

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all



-6(CA)  (0207)                          Page 4 of 15                          Initials: _____                          Form 3005  1/01

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

Case 2:14-bk-29929-NB   Doc 34   Filed 01/22/15   Entered 01/22/15 11:24:40   Desc
Main Document   49   Page 28 of 164



7

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to

 -6(CA) (0207)          Page 6 of 15          Initials:           Form 3005  1/01




the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(CA) (0207)                           Page 7 of 15          Initials:           Form 3005   1/01

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage





/D

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

-6(CA) (0207)                         Page 9 of 15                    Initials:                  Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall

-6(CA) (0207)                    Page 10 of 15              Initials: ___    Form 3005  1/01



not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

-6(CA) (0207)                    Page 11 of 15          Initials:           Form 3005  1/01



13

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(CA) (0207)            Page 12 of 15            Initials: ___            Form 3005  1/01



14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6(CA) (0207)                  Page 13 of 15                  Initials:                   Form 3005  1/01

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                    HOURIG TARTARIAN            -Borrower

_____                    _____ (Seal)
                                                                                -Borrower

_____ (Seal)             _____ (Seal)
                                 -Borrower                                       -Borrower

_____ (Seal)             _____ (Seal)
                                 -Borrower                                       -Borrower

_____ (Seal)             _____ (Seal)
                                 -Borrower                                       -Borrower

-6(CA) (0207)                    Page 14 of 15                    Form 3005  1/01

*16*

State of California
County of *LOS ANGELES*                                         } ss.

On *MAY 22nd, 2007* before me, *GARABET K. MOUMDJIAN, A NOTARY PUBLIC*
                                                              personally appeared

*HOURIG TARTARIAN,*

~~personally known to me~~

☒ proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

  

-6(CA) (0207)                     Page 15 of 15        Initials: _____    Form 3005  1/01

*17*

"EXHIBIT A"

LEGAL DESCRIPTION

Lot 84 of Tract No. ███ the County of Los Angeles, State of California, as per Map recorded in Book 104,
Page 20 of Maps, in the Office of the County Recorder of said County.




# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (Assumable after Initial Period) (45 Day Lookback)

THIS ADJUSTABLE  RATE RIDER is made this 22nd      day of    May 2007                    ,
and is incorporated  into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument")  of the same date given by the
undersigned  (the "Borrower")  to secure the Borrower's Adjustable  Rate Note (the "Note") to

**National City Mortgage a division of National City Bank**

(the "Lender")  of the same date and covering the property described in the Security
Instrument and located at:

**1421 VALENCIA AVENUE , PASADENA , California 91104**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY
ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of   6.750                    %. The Note
provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of   June 2012                    ,
and may change on that day every sixth month thereafter.  Each date on which my interest
rate could change is called a "Change Date."
**(B) The Index**
Beginning with the first Change Date, my interest  rate will be based on an Index. The
"Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of
interbank offered rates for six-month U.S. dollar-denominated  deposits in the London

**MULTISTATE  ADJUSTABLE  RATE  RIDER  6-Month LIBOR Index  (Assumable  after
Initial Period) (45 Day Lookback)** - Single Family - **Freddie Mac UNIFORM INSTRUMENT
Form 5124 5/04**
VMP®-174R (0406)
Page 1 of 4                Initials: _____
VMP Mortgage Solutions, Inc.

19

market, as published in <u>The Wall Street Journal</u>. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding      **TWO AND 3/4THS**       percentage point(s) (    **2.750**    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.750**       % or less than       **2.750**       %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than        **ONE**       percentage point(s) (    **1.000**    %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than    **11.750**    %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written

VMP®-174R (0406)                                     Page 2 of 4                     Initials: HT                Form 5124 5/04

consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _____

2↓

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)        _____ (Seal)
             -Borrower                          -Borrower
**HOURIG TARTARIAN**

_____ (Seal)        _____ (Seal)
             -Borrower                          -Borrower

_____ (Seal)        _____ (Seal)
             -Borrower                          -Borrower

_____ (Seal)        _____ (Seal)
             -Borrower                          -Borrower

VMP®-174R (0406)            Page 4 of 4            Form 5124 5/04



This page is part of your document - DO NOT DISCARD    *Tartarian*

Pages:
02

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California                                    Fee:    9.00
                                              Tax:    0.00
01/17/08 AT 08:57AM                           Other:  0.00
                                              Total:  9.00

1568794    200801170100019    Mail

TITLE(S) :

L E A D    S H E E T

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.    Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED



This Instrument Prepared By:
Harish Penakacherla
After Recording Return To:
National City Mortgage
P.O. Box 8800      Dayton,
OH  45401-8800



01/17/08

Parcel:

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

NCM#: ▮                                          TARTARIAN, HOURIG

MIN and MERS Phone:                    Recording District: Los Angeles

### ASSIGNMENT OF Deed of Trust

For value received, the undersigned, hereby grants, assigns and transfers to:  National City Mortgage Co., a subsidiary of National City Bank  located at   3232 Newmark Drive, Miamisburg, OH  45342, all beneficial interest under that certain Deed of Trust dated 5/22/2007 executed by:

Trustor(s)   **HOURIG  TARTARIAN**

to NATIONAL CITY BANK for "NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK", in the amount of: "513,750", recorded 5/31/2007 as Instrument No.▮n Book/Volume: Page:   of the Official Records of Los Angeles County, California describing the land therein:

Property Address:    **1421 VALENCIA AVE, PASADENA, CA  91104**

**Legal Description As Per Deed of Trust Referred To Herein**

Together with the Note or Notes therein described or referenced to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

**National City Mortgage, a division of National City Bank**

Jeff Blum, Supervisor

State of  OHIO       County of  MONTGOMERY

On 12/5/2007 before me, Christa Dahlinghaus the undersigned, a Notary Public in and for the State of OHIO, personally appeared Jeff Blum, Supervisor of National City Mortgage, a division of National City Bank personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that for his signature on the instrument the person, or the entity upon behalf of which he acted. executed the instrument.

*Christa Dahlinghaus*

Christa Dahlinghaus, Notary Public in and for the State of OHIO
My Commission Expires:  7/2/2011   My County of Residence:  MONTGOMERY

CHRISTA DAHLINGHAUS, Notary Public
In and for the State of Ohio
My Commission Expires July 2, 2011

**This page is part of your document - DO NOT DISCARD**

[redacted]

**Pages: 0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County, California**

**05/25/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

[redacted]

**LEADSHEET**

[redacted]

**SEQ:**
**19**

DAR - Title Company (Hard Copy)

[redacted]

**THIS FORM IS NOT TO BE DUPLICATED**

T29

E442318

2-SS

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

RECORDING REQUESTED BY:
PNC Mortgage, a division of PNC Bank, National
Association, successor by merger to National City
Mortgage a division of National City Bank



05/25/2012

PREPARED BY AND WHEN
RECORDED MAIL TO
Pite Duncan, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

APN: ███████
MERS Phone: ███████
Property Address 1421 Valencia Avenue, Pasadena, California 91104

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to J.P. Morgan Mortgage
Acquisition Corp. all beneficial interest under that certain Deed of Trust dated May 22, 2007, executed by
Hourig Tartarian an unmarried woman, to National City Bank as trustee, for National City Mortgage a
division of National City Bank, as beneficiary, and recorded as Instrument No. ███████ on May 31,
2007, in the State of California, Los Angeles County Recorder's Office.

Dated: *May 9, 2012*        **PNC Bank, National Association, successor by merger to**
**National City Mortgage, a division of National City Bank**
By: *Trisha Payton*
Name:     **Trisha Payton**
Title:     **Authorized Signer**

State of Ohio              )
County of Montgomery       )
On ___5/9/12___ before me, *Shaynea L. Mester*, a Notary Public, personally
appeared *Trisha Payton*, who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___Ohio___ that the foregoing paragraph is true and
correct.

WITNESS my hand and official seal

*Shaynea L. Mester*
Notary Public

SHAYNEA L. MESTER, Notary Public
In and for the State of Ohio
My Commission Expires June 29, 2016

(This Area for Official Notary Seal)

19

.

.

When Recorded Return To:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CA  92799-7670
ATTN: LMTS

THIS DOCUMENT WAS PREPARED BY:
Kevin Brant
PNC MORTGAGE
3232 NEWMARK DRIVE
MIAMISBURG, OHIO 45342

Tax Parcel No ████████

[Space Above This Line for Recording Data]
_____
Original Recorded Date: MAY 31, 2007                     Loan No ████████
Original Principal Amount: $   513,750.00

## LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **30TH**  day of **APRIL, 2010**        ,
between   **Hourig Tartarian, an unmarried woman,**


("Borrower") and  **PNC MORTGAGE, A DIVISION OF PNC BANK, NA**
                                                              ("Lender"),

amends and supplements (1) the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), and
Timely Payment Rewards Rider, if any, dated **MAY 22, 2007**                      and recorded in
**Instrument No** ████████                            , of the  **Official**    Records of
                                                           (Name of Records)
**LOS ANGELES COUNTY, CALIFORNIA**           , and (2) the Note bearing the same date as, and
          (County and State, or other jurisdiction)
secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at
**1421 VALENCIA AVE, PASADENA, CALIFORNIA 91104**                                              ,
                                    (Property Address)

_____
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument        Form 3162  6/06 (rev. 01/09)
First American Loan Production Services                                            *(page 1 of 5)*
First American Real Estate Solutions LLC
FALPS# FM3162  Rev. 04-05-10

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **MAY 1, 2010**             , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $    **561,513.28**    consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first three years at the yearly rate of **4.750000** % from **MAY 1, 2010**             , and Borrower promises to pay monthly payments of principal and interest in the amount of $    **3,074.01**    beginning on the **1ST** day of **JUNE, 2010**             . During the fourth year and continuing thereafter until the Maturity Date (as hereinafter defined), interest will be charged at the yearly rate of **5.125000** %, from **MAY 1, 2013**             , and Borrower shall pay monthly payments of principal and interest in the amount of $    **3,188.07**    beginning on the **1ST** day of **JUNE, 2013** and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full. If on **JUNE 01, 2037**             , (the "Maturity Date"), Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument        Form 3162  6/06 (rev. 01/09)
First American Loan Production Services                                          *(page 2 of 3)*
First American Real Estate Solutions LLC
FALPS# FM33162-2.2  Rev. 04-05-10

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)   all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

    (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument      Form 3162  6/06 (rev. 01/09)
First American Loan Production Services                                                       (page 3 of 5)
First American Real Estate Solutions LLC
FALPS# FM3162-3  Rev. 04-05-10

PNC MORTGAGE, A DIVISION OF PNC BANK, NA

Name: _Jamie Osterfeld_ _Angela Ulrich_ _____ - Lender
Its:  **Authorized Agent**

_____ (Seal)
**HOURIG TARTARIAN**                        - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

_____ (Seal)
                                            - Borrower

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument      Form 3162 6/06 (rev. 01/09)
First American Loan Production Services                                          (page 4 of 5)
First American Real Estate Solutions LLC
FALPS# FM3162-4  Rev. 04-05-10

_____   [Space Below This Line for Acknowledgment]   _____

### BORROWER'S ACKNOWLEDGMENT

State of California                                     )
County of LOS ANGELES )
On 5-13-10 before me, BERJOUHI YEDALIAN N. Public personally appeared
<small>(here insert name and title of officer)</small>
**HOURIG TARTARIAN**
_____
_____
_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

> BERJOUHI A. YEDALIAN
> Commission #
> Notary Public - California
> Los Angeles County
> My Comm. Expires May 9, 2012

### LENDER'S ACKNOWLEDGMENT

State of **OHIO**                                          )
County of **MONTGOMERY** )
On May 20, 2010 before me, Tiona Hill, Notary Public, personally appeared
<small>(here insert name and title of officer)</small>
Jamie Osterfeld, Authorized Agent
Angela Ulrich

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae Uniform Instrument          Form 3162 6/06 (rev. 01/09)
Modified by First American Loan Production Services                                                        (page 5 of 5)
First American Real Estate Solutions LLC
FALPS# CAFM3162-5 Rev. 02-05-09                                                                    **CALIFORNIA**

**TIONA HILL**
Notary Public, State of Ohio
My Commission Exp. Oct. 31, 2014

Date:  MAY 1, 2010
Loan Number: █████████
Lender:    PNC MORTGAGE, A DIVISION OF PNC BANK, NA

Borrower   HOURIG TARTARIAN

Property Address:   1421 VALENCIA AVE
                    PASADENA, CALIFORNIA 91104

## NOTICE OF NO ORAL AGREEMENTS

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE
PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS
OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Receipt of Notice.  The undersigned hereby admit to having each received and read a copy of this Notice on or before
execution of the Loan Agreement.  "Loan Agreement" means one or more promises, promissory notes, agreements,
undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those
actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay
repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____           5/12/10
Borrower                                                 Date
HOURIG TARTARIAN

_____           _____
Borrower                                                 Date

_____           _____
Borrower                                                 Date

_____           _____
Borrower                                                 Date

_____           _____
Borrower                                                 Date

First American Loan Production Services                  Notice of No Oral Agreements
© 2008 First American Real Estate Solutions LLC
FALPS# FAND033 Rev. 12-10-08

Date:  **MAY 1, 2010**
Loan Number: ███████
Lender:  **PNC MORTGAGE, A DIVISION OF PNC BANK, NA**

Borrower:  **HOURIG TARTARIAN**

Property Address:  **1421 VALENCIA AVE**
                   **PASADENA, CALIFORNIA 91104**

## ERRORS AND OMISSIONS
## COMPLIANCE AGREEMENT

In consideration of **PNC MORTGAGE, A DIVISION OF PNC BANK, NA**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____        5/D-10
**HOURIG TARTARIAN**                                           Date

_____
                                                              Date

_____
                                                              Date

_____
                                                              Date

_____
                                                              Date

_____
                                                              Date

First American Loan Production Services                    Errors and Omissions Compliance Agreement
© 2008 First American Real Estate Solutions LLC
FALPS# FAND034 Rev. 12-10-08

**EXHIBIT A**



Comptroller of the Currency
Administrator of National Banks

Northeastern District Office
340 Madison Avenue, 5th Floor
New York, New York 10173-0002

Licensing Division
Telephone: (212)790-4055
Fax: (301) 333-7015

November 6, 2009

James S. Keller
Chief Regulatory Counsel
The PNC Financial Services Group, Inc.
249 Fifth Avenue
One PNC Plaza. 21st Floor
Pittsburgh, Pennsylvania 15222-2707

Re:  Application to merge National City Bank, Cleveland, Ohio, with and into PNC Bank,
     National Association, Wilmington, Delaware under the charter and title of the latter.
     Control No: 2009 NE 02 0017                    Charter No: 1316

Dear Mr. Keller:

This letter is the official certification of the Comptroller of the Currency to merge National City
Bank, Cleveland, Ohio ("NCB"), with and into PNC Bank, National Association, Wilmington,
Delaware ("PNC Bank"), effective as of close of business on November 6, 2009.  The resulting
bank's title is PNC Bank, National Association, charter number 1316.

This is also the official authorization given to PNC Bank, the resulting bank, to operate branches
of NCB as branches of the resulting bank. Branches of a national bank target are automatically
carried over to the resulting bank and retain their current OCC branch numbers.

We understand that upon consummation, the capital surplus of PNC Bank will increase.  Within
30 days following consummation, please provide this office with the exact dollar amount of the
capital change so that we may issue our letter certificating the capital increase.

If the combination does not occur as represented in your letter of October 26, 2009, this
certification must be returned to the OCC.  Following consummation of the merger, please return
the charter certificate for NCB so that we may properly close our files for this bank.

Sincerely,

Sandya Reddy
Acting Director for District Licensing

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): <u>Proof of Claim</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>January 22, 2015</u>           , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR DEBTOR:**
James T King  ecfnotices@kingobk.com

**TRUSTEE:**
Kathy A. Dockery (TR)  efiling@CH13LA.com

**U.S. TRUSTEE:**
U.S. Trustee  ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) <u>January 22, 2015</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR:**
Hourig Tartarian
Aka Houry Tartarian
Dba Re-juvenate
1421 Valencia Avenue
Pasadena, CA 91104

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| January 22, 2015    BRIANNE M. FLOQUET | | /s/ BRIANNE M. FLOQUET |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                          **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT "2"

Consumer Liability Report (CLR)

Legal Data Services
a CINgroup company

Page 1 of 11

866 218 1003 tel
866 307 1003 fax
www.CINlegal.com

### Client & Report Information

| | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

### Summary of Accounts With Balances

| Account Types | Number of Accounts | Total Monthly Payments | Total of Balances Remaining | Number of Past Due Accounts | Percentage of Accounts Past Due | & Total of Amounts Past Due |
|---|---|---|---|---|---|---|
| Collection | 6 | $0.00 | $45,504.00 | 6 | 100.00% | $45,504.00 |
| Installment | 1 | $3,573.00 | $546,559.00 | 1 | 100.00% | $113,266.00 |
| Revolving | 10 | $8,996.00 | $77,531.00 | 9 | 90.00% | $52,950.00 |
| Unknown | 1 | $746.00 | $97,788.00 | 1 | 100.00% | $3,728.00 |
| **Totals** | **18** | **$13,315.00** | **$767,382.00** | **17** | **94.44%** | **$215,448.00** |

### Graphical Overview of Key Account Data



**Monthly Payment by Type**

$8,996.00 Revolving
$746.00 Unknown
$3,573.00 Installment

**Outstanding Balance by Type**

$77,531.00 Revolving
$546,559.00 Installment
$97,788.00 Unknown
$45,504.00 Collection



**Past Due Balances by Type**

$52,950.00 Revolving
$113,266.00 Installment
$3,728.00 Unknown
$45,504.00 Collection

### myHorizon™ Credit Score Analysis for Primary Client



POWERED BY creditxpert™

| | EXISTING CREDIT SCORE | ESTIMATED 12 MONTH POST - BANKRUPTCY CREDIT SCORE* | NET EFFECT |
|---|---|---|---|
| | **536** | **660** | **+124** |

CreditXpert® products are based on information derived from credit reports produced by the major credit reporting agencies. CreditXpert Inc. is not responsible for inaccurate results, including any due to incorrect, missing, outdated credit report information or incorrect assumptions about the future. Scores and score changes predicted by CreditXpert products are only estimates and are not guaranteed. CreditXpert Inc. does not represent that CreditXpert Credit Scores(tm) are identical or similar to credit scores produced by any other company. CreditXpert Inc. is not associated with Fair Isaac Corporation.  CreditXpert Inc. is not a credit counseling or a credit repair organization.

The foregoing is not intended to provide or imply warranties of any kind. CreditXpert products are provided on an "as is" basis, and CreditXpert inc. and its distributors disclaim any and all warranties, either express or implied, including but not limited to any warranty of merchantability, fitness for a particular purpose, non-infringement, system integration, non-interference and/or accuracy of informational content.

### Notes & Alerts

| **File Alert - No Discrepencies** | **No Alerts or Notes exist for this file.** |
|---|---|

Consumer Liability Report (CLR)

Legal Data Services
a CINgroup company

866 218 1003 tel
866 307 1003 fax
www.CINlegal.com

## Client & Report Information

| | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

## Mortgage Liabilities with Balances — 2 Total Mortgage Account(s) with a balance

| Account Name,  Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type, Last Activity & Past Due $ | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| Pnc Mortgage<br>Individual / Applicant<br>XXXXXX4353<br>Account is: Open, | $546,559 | $513,750 | 5/2007<br>3/10/2014 | $3,573<br>Mortgage<br>2/20/2013<br>$113,266 | | 6 N Main St<br>Dayton, OH 45402<br>937-226-2079 |
| Pnc Mortgage<br>Individual / Applicant<br>XXXXXX4362<br>Account is: Open, | $97,788 | $99,250 | 5/2007<br>8/1/2009 | $746<br>Mortgage<br>3/1/2009<br>$3,728 | | 6 N Main St<br>Dayton, OH 45402<br>937-226-2079 |
| End of Mortgages With Balances | | | | | | |

## Non-Mortgage Liabilities with Balances — 16 Account(s) with balances

| Account Name,  Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type, Last Activity & Past Due $ | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| Asset Acceptance Llc<br>Individual / Applicant<br>XXXXXX5728<br>Account is: Open, DISMISSED<br>Orginal Creditor: (WELLS FARGO BANK  NA) | $33,779 | $19,988 | 6/2010<br>10/2/2014 | $0<br>Open<br>3/1/2009<br>$33,779 | Asset Acceptance<br>Attn: Bankrupcy Dept,<br>PO Box 2036<br>Warren, MI 48090<br><br>Verified: 6-2013 | Po Box 1630<br>Warren, MI 48090<br>800-614-4730 |
| Wells Fargo Card Ser<br>Individual / Applicant<br>XXXXXX2990<br>Account is: Closed, PURCHASED BY ANOTHER LENDER | $17,344 | $17,344 | 6/2007<br>6/11/2010 | $433<br>Revolving<br>3/1/2009<br>$6,937 | Wells Fargo Card Ser<br>1 Home Campus, 3rd Floor<br>Des Moines, IA 50328<br>800-847-8899<br>Verified: 4-2012 | Po Box 14517<br>Des Moines, IA 50306<br>800-642-4720 |
| Capital One Bank Usa<br>Individual / Applicant<br>XXXXXX8973<br>Account is: Closed, DISMISSED | $16,335 | $12,078 | 6/2004<br>10/5/2014 | $491<br>Revolving<br>4/1/2009<br>$16,335 | Capital 1 Bank<br>Attn: General Correspondence, PO Box  30285<br>Salt Lake City, UT 84130<br>800-955-7070<br>Verified: 8-2014 | Po Box 85520<br>Richmond, VA 23285<br>800-955-7070 |
| Bank Of America<br>Individual / Applicant<br>XXXXXX6311<br>Account is: Closed, DISMISSED | $10,293 | $10,293 | 6/2007<br>12/7/2013 | $102<br>Revolving<br>4/1/2009<br>$2,319 | | Po Box 982235<br>El Paso, TX 79998<br>800-421-2110 |
| Capital One Bank Usa<br>Individual / Applicant<br>XXXXXX6974<br>Account is: Closed, DISMISSED | $9,906 | $7,370 | 7/2002<br>10/5/2014 | $298<br>Revolving<br>4/1/2009<br>$9,906 | Capital 1 Bank<br>Attn: General Correspondence, PO Box  30285<br>Salt Lake City, UT 84130<br>800-955-7070<br>Verified: 8-2014 | Po Box 85520<br>Richmond, VA 23285<br>800-955-7070 |

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

**Legal Data Services**
a CINgroup company

Page 3 of 11

866 218 1003  tel
866 307 1003  fax
www.CINlegal.com

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

| Non-Mortgage Liabilities with Balances | | | | | | 16 Account(s) with balances |
|---|---|---|---|---|---|---|
| **Account Name, Owner/Type, Account Number & Status** | **Current Balance** | **High Credit** | **Date Opened & Last Reported** | **Payment Info, Account Type, Last Activity & Past Due $** | **Corporate Bankruptcy Department - Where Available (2)** | **Reported Contact Information** |
| Portfolio Recovery Ass Individual / Applicant XXXXXX4479 Account is: Open, DISMISSED Orginal Creditor: (CHASE BANK USA NATIONAL ASSOC) | $8,294 | $8,294 | 2/2011 10/2/2014 | $0 Open 9/1/2008 $8,294 | Portfolio Recovery Attn: Bankruptcy, PO Box 41067 Norfolk, VA 23541 877-829-8298 Verified: 2-2013 | 120 Corporate Blvd, Ste 100 Norfolk, VA 23502 757-519-9300 |
| Thd/cbna Individual / Applicant XXXXXX6335 Account is: Open, Charge Off for $7218 on 08/09 | $7,218 | $7,218 | 8/2004 11/29/2013 | $7,218 Revolving 2/6/2009 $7,218 | Citibank Usa Citicorp Credit Services/Attn:Centralize d Bankruptcy, PO Box 20507 Kansas City, MO 64195 800-846-8444 Verified: 9-2014 | Po Box 6497 Sioux Falls, SD 57117 800-677-0232 |
| Capital One Bank Usa Individual / Applicant XXXXXX0379 Account is: Closed, DISMISSED | $5,922 | $4,323 | 2/1998 10/5/2014 | $178 Revolving 4/1/2009 $5,922 | Capital 1 Bank Attn: General Correspondence, PO Box  30285 Salt Lake City, UT 84130 800-955-7070 Verified: 8-2014 | Po Box 85520 Richmond, VA 23285 800-955-7070 |
| Capital One Bank Usa Individual / Applicant XXXXXX9211 Account is: Closed, DISMISSED | $3,961 | $2,844 | 7/2001 10/5/2014 | $119 Revolving 4/1/2009 $3,961 | Capital 1 Bank Attn: General Correspondence, PO Box  30285 Salt Lake City, UT 84130 800-955-7070 Verified: 8-2014 | Po Box 85520 Richmond, VA 23285 800-955-7070 |
| Aspire Individual / Applicant XXXXXX4158 Account is: Closed, Account Closed By Grantor | $3,475 | $3,515 | 1/2001 8/10/2009 | $53 Revolving 2/26/2009 $212 | | Po Box 105555 Atlanta, GA 30348 |
| Syncb/low Authorized User / Applicant XXXXXX1535 Account is: Open, Current Account | $2,287 | $2,336 | 9/2010 9/28/2014 | $69 Revolving 9/18/2014 $0 | GECRB/Lowes Attention:  Bankruptcy Department, PO Box 103104 Roswell, GA 30076 800-727-3690 Verified: 4-2013 | Po Box 956005 Orlando, FL 32896 800-444-1408 |
| Receivables Performanc Joint Contractual Liability / Applicant XXXXXX4324 Account is: Open, Collection Orginal Creditor: (SPRINT) | $1,795 | $1,451 | 5/2014 8/22/2014 | $0 Open 12/1/2013 $1,795 | | 20816 44th Ave W Lynnwood, WA 98036 425-412-2600 |

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

**Legal Data Services**
a CINgroup company

Page 4 of 11

866 218 1003 tel
866 307 1003 fax
www.CINlegal.com

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

| Non-Mortgage Liabilities with Balances | | | | | | 16 Account(s) with balances |
|---|---|---|---|---|---|---|
| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type, Last Activity & Past Due $ | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
| California Business Bu Individual / Applicant XXXXXX4201 Account is: Open, Collection Orginal Creditor: (METHODIST HOSPITAL OF SO CAL) | $1,359 | $1,358 | 11/2013 1/6/2014 | $0 Open 6/1/2013 $1,359 | Central Financial Control Attention: Bankruptcy, PO Box 66044 Anaheim, CA 92816 800-345-4261 Verified: 3-2013 | 1711 S Mountain Ave Monrovia, CA 91016 800-755-1515 |
| Seventh Avenue Individual / Applicant XXXXXX857O Account is: Closed, ACCOUNT TRANSFERRED | $790 | $790 | 8/2004 10/1/2013 | $35 Revolving 5/1/2009 $140 | Ginnys/Swiss Colony Inc Attn: Bankruptcy, 1112 7th Ave Monroe, WI 53566 608-324-4655 Verified: 4-2013 | 1112 7th Ave Monroe, WI 53566 |
| Collection Consultants Individual / Applicant XXXXXX9771 Account is: Open, Collection Orginal Creditor: (HUNTINGTON MEMORIAL HOSPITAL) | $152 | $152 | 2/2013 7/11/2013 | $0 Open 5/1/2011 $152 | Collection Consultants PO Box 29050 Glendale, CA 91209 818-551-5600 Verified: 5-2013 | 6100 San Fernando Rd Ste Glendale, CA 91201 818-551-5600 |
| Union Adjustment Co Individual / Applicant XXXXXX6799 Account is: Open, ACCOUNT IN DISPUTE Orginal Creditor: (MICHAEL NOVAK MD  INC) | $125 | $125 | 4/2014 5/31/2014 | $0 Open 1/1/2014 $125 | | 3214 W Burbank Blvd Burbank, CA 91505 818-566-8330 |
| End of Non-Mortgage Accounts With Balances | | | | | | |

| Liabilities without Balances | | | | | | 24 Account(s) without a balance |
|---|---|---|---|---|---|---|
| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
| Bank Of America, N.a Individual / Applicant XXXXXX0140 Account is: Closed, Account Closed | $0 | $535,500 | 4/2005 5/31/2007 | $3,074 Mortgage 5/31/2007 | Bank of America Attn: Correspondence Unit/CA6-919-02-41, PO Box 5170 Simi Valley, CA 93062 888-702-1161 Verified: 6-2013 | 1800 Tapo Canyon Rd Simi Valley, CA 93063 800-451-6362 |
| Homewardres Individual / Applicant XXXXXX9259 Account is: Open, Current Account | $0 | $535,500 | 4/2005 6/6/2005 | $3,074 Mortgage 5/25/2005 | American Home Mtg Srv/Homeward Residental AHMSI / Attention: Bankruptcy, PO Box 631730-1730 Irving, TX 75063 888-237-9280 Verified: 3-2013 | 1525 S Beltline Coppell, TX 75019 877-304-3100 |

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

Legal Data Services
a CINgroup company

Page 5 of 11

866 218 1003  tel
866 307 1003  fax
www.CINlegal.com

| Client & Report Information | |
| --- | --- |
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

| Liabilities without Balances | | | | | | 24 Account(s) without a balance |
| --- | --- | --- | --- | --- | --- | --- |
| Account Name,  Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
| Bank Of America, N.a Individual / Applicant XXXXXX5458 Account is: Closed, Account Closed | $0 | $397,600 | 7/2004 5/31/2005 | $2,195 Mortgage 5/1/2005 | Bank of America Attn: Correspondence Unit/CA6-919-02-41, PO Box 5170 Simi Valley, CA 93062 888-702-1161 Verified: 6-2013 | 1800 Tapo Canyon Rd Simi Valley, CA 93063 800-451-6362 |
| Bank Of America, N.a Individual / Applicant XXXXXX5586 Account is: Closed, Account Closed | $0 | $50,000 | 7/2004 5/31/2005 | $9 Revolving 5/1/2005 | Bank of America Attn: Correspondence Unit/CA6-919-02-41, PO Box 5170 Simi Valley, CA 93062 888-702-1161 Verified: 6-2013 | 1800 Tapo Canyon Rd Simi Valley, CA 93063 800-451-6362 |
| Wells Fargo Bank Nv Na Joint Contractual Liability / Applicant XXXXXX0001 Account is: Open, ACCOUNT TRANSFERRED | $0 | $25,500 | 4/2002 1/31/2013 | $0 Credit Line 10/2/2012 | | Cbdru - Pcm Winston Salem, NC 27102 |
| Bank Of America Individual / Applicant XXXXXX5310 Account is: Open, ACCOUNT TRANSFERRED | $0 | $17,424 | 7/2005 1/20/2011 | $0 Revolving 3/9/2009 | | Po Box 982235 El Paso, TX 79998 800-421-2110 |
| First Usa, N.a. Individual / Applicant XXXXXX3323 Account is: Closed, ACCOUNT TRANSFERRED | $0 | $10,997 | 7/2004 3/8/2011 | $0 Revolving 3/25/2010 | | P.o. Box 15298 Wilmington, DE 19850 800-955-9900 |
| Discover Fin Svcs Llc Individual / Applicant XXXXXX8778 Account is: Open, ACCOUNT TRANSFERRED | $0 | $10,329 | 7/2005 11/22/2012 | $0 Revolving 2/4/2009 | | Pob 15316 Wilmington, DE 19850 800-347-2683 |
| Us Bk Rms Cc Individual / Applicant XXXXXX6784 Account is: Closed, ACCOUNT WAS CHARGE OFF | $0 | $8,872 | 8/2004 9/1/2010 | $0 Revolving 6/28/2010 | | Po Box 108 St Louis, MO 63166 866-234-4750 |
| Chase Bank Usa, Na Individual / Applicant XXXXXX4479 Account is: Closed, ACCOUNT TRANSFERRED | $0 | $8,293 | 7/2004 2/22/2011 | $0 Revolving 3/1/2009 | | P.o. Box 15298 Wilmington, DE 19850 800-955-9900 |
| Chase Bank Usa, Na Individual / Applicant XXXXXX8374 Account is: Closed, ACCOUNT TRANSFERRED | $0 | $7,006 | 7/1998 11/17/2009 | $5,186 Revolving 4/1/2009 | | P.o. Box 15298 Wilmington, DE 19850 800-955-9900 |

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

Legal Data Services
a CINgroup company

866 218 1003 tel
866 307 1003 fax
www.CINlegal.com

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

### Liabilities without Balances — 24 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| Chase Bank Usa, Na<br>Individual / Applicant<br>XXXXXX2069<br>Account is: Closed, ACCOUNT TRANSFERRED | $0 | $5,532 | 9/2000<br>11/15/2009 | $3,937<br>Revolving<br>4/1/2009 | | P.o. Box 15298<br>Wilmington, DE 19850<br>800-955-9900 |
| Capital One / Saks F<br>Individual / Applicant<br>XXXXXX7284<br>Account is: Closed, ACCOUNT TRANSFERRED | $0 | $4,471 | 8/1999<br>12/1/2013 | $0<br>Revolving<br>4/1/2009 | | Po Box 10327<br>Jackson, MS 39289<br>800-221-8340 |
| Exxon/mobil/cbna<br>Individual / Applicant<br>XXXXXX7642<br>Account is: Closed, SETTLEMENT ACCEPTED ON THIS ACCOUNT | $0 | $3,532 | 4/1993<br>2/7/2014 | $0<br>Revolving<br>4/16/2010 | Exxmblciti<br>Attn.: Centralized Bankruptcy, PO Box 20507<br>Kansas City, MO 64195<br>866-523-0117<br>Verified: 4-2012 | Po Box 6497<br>Sioux Falls, SD 57117<br>800-950-5114 |
| Chase Bank Usa, Na<br>Individual / Applicant<br>XXXXXX7074<br>Account is: Closed, ACCOUNT TRANSFERRED | $0 | $2,655 | 7/2005<br>1/3/2011 | $0<br>Revolving<br>4/1/2009 | | P.o. Box 15298<br>Wilmington, DE 19850<br>800-955-9900 |
| Syncb/care Credit<br>Individual / Applicant<br>XXXXXX5132<br>Account is: Closed, Account Closed By Grantor | $0 | $2,000 | 10/2007<br>10/13/2014 | $0<br>Revolving<br>12/12/2013 | GECRB/Care Credit<br>Attn: Bankruptcy, PO Box 103104<br>Roswell, GA 30076<br>800-480-2140<br>Verified: 3-2013 | C/o Po Box 965036<br>Orlando, FL 32896<br>866-396-8254 |
| Wells Fargo Financia<br>Individual / Applicant<br>XXXXXX7379<br>Account is: Closed, Account Closed By Grantor | $0 | $1,500 | 9/2005<br>1/12/2007 | $0<br>Revolving<br>2/28/2006 | | Po Box 94498<br>Las Vegas, NV 89193<br>800-635-5585 |
| Chase - Pier 1<br>Individual / Applicant<br>XXXXXX9065<br>Account is: Closed, Account Closed By Grantor | $0 | $800 | 8/2004<br>2/22/2011 | $0<br>Revolving<br>11/4/2007 | | Po Box 15298<br>Wilmington, DE 19850<br>800-955-9900 |
| Hsbc Bank<br>Individual / Applicant<br>XXXXXX3837<br>Account is: Closed, PURCHASED BY ANOTHER LENDER | $0 | $779 | 5/2007<br>11/1/2009 | $0<br>Revolving<br>3/1/2009 | | 95 Washington Street<br>Buffalo, NY 14203<br>888-385-8916 |
| Portfolio Recovery Ass<br>Individual / Applicant<br>XXXXXX8216<br>Account is: Closed, ELECTION OF REMEDY<br>Orginal Creditor: (WORLD FINANCIAL NETWORK NATL B) | $0 | $448 | 11/2009<br>6/1/2010 | $0<br>Open<br>3/29/2010 | Portfolio Recovery<br>Attn: Bankruptcy, PO Box 41067<br>Norfolk, VA 23541<br>877-829-8298<br>Verified: 2-2013 | 120 Corporate Blvd, Ste 100<br>Norfolk, VA 23502<br>757-519-9300 |

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

Legal Data Services

a CINgroup company

866 218 1003  tel
866 307 1003  fax
www.CINlegal.com

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

## Liabilities without Balances — 24 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| Syncb/lowes<br>Individual / Applicant<br>XXXXXX7731<br>Account is: Open, Current Account | $0 | $224 | 9/2005<br>10/13/2014 | $0<br>Revolving<br>3/30/2008 | GECRB/Lowes<br>Attention:  Bankruptcy Department, PO Box 103104<br>Roswell, GA 30076<br>800-727-3690<br>Verified: 4-2013 | Po Box 956005<br>Orlando, FL 32896<br>800-444-1408 |
| Comenity Bank/dmstctns<br>Individual / Applicant<br>XXXXXX8934<br>Account is: Open, Current Account | $0 | $300 | 5/2006<br>8/23/2006 | $0<br>Revolving<br>8/6/2006 | Domstication<br>CALL 913-577-5000<br>,<br>Verified: 12-2011 | Po Box 337003<br>Northglenn, CO 80233<br>913-577-5000 |
| Pier 1/nb<br>Individual / Applicant<br>XXXXXX4502<br>Account is: Open, Current Account | $0 | $0 | 8/2004<br>4/22/2007 | $0<br>Revolving<br>3/8/2006 | Pier 1/NB/Chase<br>Chase Card Services/Attention: Bankruptcy, PO Box 15298<br>Wilmington, DE 19850<br>888-242-7320<br>Verified: 11-2011 | 2500 Westfield Dr<br>Elgin, IL 60124<br>800-945-2006 |
| Homeward Residential<br>Individual / Applicant<br>XXXXXX9259<br>Account is: Closed, Account Closed | $0 | $535,500 | 5/2005<br>7/5/2005 | $0<br>Mortgage<br>5/25/2005 | American Home Mtg Svci<br>AHMSI / Attention: Bankruptcy, PO Box 631730<br>Irving, TX 75063<br>888-237-9280<br>Verified: 8-2013 | 1525 S Belt Line Rd<br>Coppell, TX 75019<br>877-304-3100 |

## Public Records — 1 Public Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Defendant |
|---|---|---|---|---|---|---|---|
| US BKPT CT CA L A | Dismissed | 2010-12-3 | $0 | Bankruptcy Chapter13 | 1061756JWB | | |

## Address Variations

| | |
|---|---|
| Reported: Different Address | 1421 VALENCIA AVE, PASADENA, CA 911042028,Rptd:11/2013 |
| Reported: Different Address | 4370 TUJUNGA AVE APT 335, STUDIO CITY, CA 916042777,Rptd:02/2010 |
| Reported: Different Address | 2046 E WASHINGTON BLVD, PASADENA, CA 911041735,Rptd:12/2004 |
| Reported: Different Address | 1421 VALENCIA AV, PASADENA, CA 91104,Rptd:09/01/2004 |
| Reported: Different Address | 2381 E WASHINGTON BV, PASADENA, CA 91104,Rptd:08/01/2004 |
| Reported: Different Address | 2336 E WASHINGTON BV, PASADENA, CA 91104,Rptd: |
| Reported: Different Address | 1421 VALENCIA AVE, PASADENA, CA 91104,Rptd:10/2014 |

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

Legal Data Services
a CINgroup company

866 218 1003  tel
866 307 1003  fax
www.CINlegal.com

## Client & Report Information

| | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

## Address Variations

| | |
|---|---|
| Reported: Different Address | 2046 E WASHINGTON BLVD, PASADENA, CA 91104,Rptd:11/2010 |
| Reported: Different Address | 4370 TUJUNGA AVE STE 335, STUDIO CITY, CA 91604,Rptd:11/2010 |

## Employment  Variations

| | |
|---|---|
| Reported: Different Employment | CALDRON JURY,Rptd:07/2005 |
| Reported: Different Employment | COLORON JEWELRY,Rptd:09/2004 |
| Reported: Different Employment | COLORON JEWERLY,Rptd:08/16/2004 |
| Reported: Different Employment | COLORON JLRY MFG,Rptd: |
| Reported: Different Employment | LEON LANDVER,Rptd: |

## Alerts

| | 1 Alert(s) |
|---|---|
| **Alert Message** | **Reporting Bureau** |
| SSN MATCH: EXACT MATCH BETWEEN SSN ON INPUT AND SSN ON FILE | Tuc01 |

### *** End of Data Reported by National Credit Bureaus ***

## 8 Year Supplemental National Bankruptcy Search — 1 National Bankruptcy Search Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Defendant |
|---|---|---|---|---|---|---|---|
| CALIFORNIA CENTRAL - LOS ANGELES | Dismissed | 2010-12-3 | $0 | Bankruptcy Chapter13 | 1061756 | HOURIG TARTARIAN, HOURIG TARTARIAN | |

## Liens/Judgments Search — 0 National Liens/Judgments Search Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Defendant | Plaintiff |
|---|---|---|---|---|---|---|---|

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

Legal Data Services

a CINgroup company

866 218 1003  tel
866 307 1003  fax
www.CINlegal.com

## Client & Report Information

| | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

## CIN Legal Data Services' myHorizon™ Credit Score

* CIN Legal Data Services myHorizon Credit Score, powered by CreditXpert, simulates changes to the credit file to calculate the potential score impact of a Chapter 7 bankruptcy filing. It simulates filing the Chapter 7 bankruptcy immediately, followed 3 months later by discharge of all debt other than student loans and mortgages. It also simulates opening a revolving credit card with a $500 credit limit 2 months after discharge, and then maintaining a balance of $300 on that card for 10 months. The final score is calculated 15 months from now (one year after the bankruptcy discharge). myHorizon assumes that monthly payments will be made on time for mortgages and student loans, and that zero-balance credit accounts will be closed by creditors at the time of discharge. Accounts last reported 4 or more months ago are not included in the bankruptcy filing unless they are derogatory accounts.

CreditXpert® products are based on information derived from credit reports produced by the major credit reporting agencies. CreditXpert Inc. is not responsible for inaccurate results, including any due to incorrect, missing, outdated credit report information or incorrect assumptions about the future. Scores and score changes predicted by CreditXpert products are only estimates and are not guaranteed. CreditXpert Inc. does not represent that CreditXpert Credit Scores(tm) are identical or similar to credit scores produced by any other company. CreditXpert Inc. is not associated with Fair Isaac Corporation. CreditXpert Inc. is not a credit counseling or a credit repair organization.

The foregoing is not intended to provide or imply warranties of any kind. CreditXpert products are provided on an  "as is"  basis, and CreditXpert inc. And its distributors disclaim any and all warranties, either express or implied, including but not limited to any warranty of merchantability, fitness for a particular purpose, non-infringement, system integration, non-interference and/or accuracy of informational content.

Copyright © 2000-2014 CreditXpert Inc. All rights reserved. CreditXpert® is a registered trademark of CreditXpert Inc. The CreditXpert logo is a trademark of CreditXpert Inc.

## Report Footnotes

1  - Monthly Payment Amounts Include Minimum Monthly Payments on Accounts with Outstanding Balances That May Have Recently Been Frozen or Closed by the Original Credit Grantor.

2  - Credit Infonet's Bankruptcy Department  Name & Address Notations List Information Was Obtained via Telephone From The Current Creditor by Credit Infonet Staff. Information Verified by Credit Infonet Staff Was Provided by the Creditor As of The "Date Verified" Date Listed Within Each Trade Name and Address Listing. Please note, BAPCPA Language Regarding the Noticing of Creditors May Dictate the Use of a Different Address.

3  - The 8 Year Supplemental National Bankruptcy Search and the Liens/Judgments Search products are not provided by "Consumer Reporting Agencies" as that term is defined in the FCRA.  Judgments, liens and other public records being reported by the national credit bureaus accessed in compiling this Consumer Liability Report will appear in the "Public Records" section.

## Importing CLR Data

Data from this CLR can be imported into participating bankruptcy forms preparation software products for thirty (30) days from the Completed On Date shown in the Report Details field above.  After thirty (30) days, the import function will no longer be available for this CLR.

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

Legal Data Services
a CINgroup company

866 218 1003  tel
866 307 1003  fax
www.CINlegal.com

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

**ATTORNEY:  PLEASE GIVE THIS NOTICE TO CONSUMERS**

Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington DC 20552.

**A Summary of Your Rights Under the Fair Credit Reporting Act**

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

●You must be told if information in your file has been used against you. Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment - or to take another adverse action against you - must tell you, and must give you the name, address, and phone number of the agency that provided the information.

●You have the right to know what is in your file. You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  ●a person has taken adverse action against you because of information in your credit report;
  ●you are the victim of identity theft and place a fraud alert in your file;
  ●your file contains inaccurate information as a result of fraud;
  ●you are on public assistance;
  ●you are unemployed but expect to apply for employment within 60 days.

●In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

●You have the right to ask for a credit score. Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

●You have the right to dispute incomplete or inaccurate information. If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

●Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information. Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

●Consumer reporting agencies may not report outdated negative information. In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

●Access to your file is limited. A consumer reporting agency may provide information about you only to people with a valid need -- usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

●You must give your consent for reports to be provided to employers. A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

●You may limit "prescreened" offers of credit and insurance you get based on information in your credit report. Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

●You may seek damages from violators. If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

Copyright © 2014 The CINgroup. All Rights Reserved

Consumer Liability Report (CLR)

Legal Data Services
a CINgroup company

866 218 1003 tel
866 307 1003 fax
www.CINlegal.com

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Hourig Tartarian  XXX-XX-0044 |
| Secondary Client Name & SSN: | |
| Primary Address: | 1421 Valencia Avenue, Pasadena, CA 91104 |
| Report Details: | Report 3688652 Completed on 10/17/2014 for A34534 - CLR Plus |

●Identity theft victims and active duty military personnel have additional rights. For more information, visit www.consumerfinance.gov/learnmore.

●States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General.

●**For Information about your Federal rights contact:**

1. a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates: Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552; b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: Federal Trade Commission: Consumer Response Center – FCRA, Washington, DC 20580, (877) 382-4357.

2. To the extent not included in item 1 above:  a. National banks, federal savings associations and federal branches and federal agencies of foreign banks: Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050; b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act: Federal Reserve Consumer Help Center, PO Box 1200,Minneapolis, MN 55480; c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations: FDIC Consumer Response Center, 1100 Walnut St., Box #11,Kansas City, MO 64106; d. Federal Credit Unions: National Credit Union Administration, Office of Consumer Protection (OCP), Division of Consumer Compliance and Outreach (DCCO), 1775 Duke Street, Alexandria, VA 22314.

3. Air carriers: Asst. General Counsel for Aviation Enforcement & Proceedings, Aviation Consumer Protection Division, Department of Transportation, 1200 New Jersey Avenue, S.E., Washington, DC 20590.

4. Creditors Subject to Surface Transportation Board: Office of Proceedings, Surface Transportation Board, Department of Transportation 395 E Street, S.W., Washington, DC 20423.

5. Creditors Subject to Packers and Stockyards Act, 1921: Nearest Packers and Stockyards Administration area Supervisor.

6. Small Business Investment Companies: Associate Deputy Administrator for Capital Access, United States Small Business Administration, 409 Third Street, SW, 8th Floor, Washington, DC 20416.

7. Brokers and Dealers: Securities and Exchange Commission, 100 F Street, N.E., Washington, DC 20549.

8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks and Production Credit Associations: Farm Credit Administration, 1501 Farm Credit Drive, McLean, VA 22102-5090.

9. Retailers, Finance Companies, and All Other Creditors Not Listed Above: FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center – FCRA, Washington, DC 20580, (877) 382-4357.

Copyright © 2014 The CINgroup. All Rights Reserved

# EXHIBIT "3"



18302 Irvine Blvd.
Tustin, CA 92780
Phone: (714) 289-3390
Fax: (949) 809-0668

Issuing Policies of Chicago Title Insurance Company

ORDER NO.:  00297700-007-                Escrow/Customer Phone:  (818) 449-3000

Ticor Title Company of California        Title Officer:
21731 Ventura Blvd., Suite 100           Title Officer Phone:
Woodland Hills, CA 91364                 Title Officer Fax:
ATTN:  Mary Selesky                      Title Officer Email:
Email:  mary.selesky@ticortitle.com

PROPERTY:      1421 Valencia Avenue, Pasadena, CA  91104

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, Ticor Title Company of California hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Nebraska Corporation.*

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**
Ticor Title Company of California

By: _____
        Authorized Signature

**TICOR TITLE**™

18302 Irvine Blvd.
Tustin, CA 92780
Phone:  (714) 289-3390
Fax:  (949) 809-0668

# PRELIMINARY REPORT

---

**EFFECTIVE DATE:**            **January 20, 2015** at 7:30 a.m.

**ORDER NO.:  00297700-007-**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Extended Loan Policy (6-17-06)**


1.      THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

**A Fee**

2.      TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

**Hourig Tartarian., an unmarried woman, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

| | |
|---|---|
| **Name of Debtor:** | **Hourig Tartarian** |
| **Date of Filing:** | **October 21, 2014** |
| **U.S. District Court:** | **Central District of California** |
| **Case No:** | **2:14-bk-29929-NB** |

3.      THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

**See Exhibit A attached hereto and made a part hereof.**

PRELIMINARY REPORT                                         Ticor Title Company of California
YOUR REFERENCE:                                            ORDER NO.:  00297700-007-

# EXHIBIT "A"

# LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 84 of Tract No. 6433, in the County of Los Angeles, State of California, as per Map recorded in Book 104, Page 20 of Maps, in the Office of the County Recorder of said County.

APN: **5853-020-011**

PRELIMINARY REPORT
YOUR REFERENCE:

<span style="color:red">Ticor Title Company of California</span>
<span style="color:red">ORDER NO.: 00297700-007-</span>

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.  Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2015-2016

2.  Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

    | | |
    |---|---|
    | Tax Identification No.: | 5853-020-011 |
    | Fiscal Year: | 2014-2015 |
    | 1st Installment: | $3,128.40 Paid |
    | 2nd installment: | $3,128.39 Open (Delinquent after April 10) |
    | Penalty and Cost: | $322.83 |
    | Homeowners Exemption: | None Shown |
    | Code Area: | 10430 |

3.  Any liens or other assessments, bonds, or special district liens including without limitation, Community Facility Districts, that arise by reason of any local, City, Municipal or County Project or Special District.

4.  The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 or Part 2, Chapter 3, Articles 3 and 4 respectively (commencing with Section 75) of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A; or as a result of changes in ownership or new construction occurring prior to date of policy

5.  Covenants, conditions, or restrictions, if any, appearing in the Public Records; however, this policy insures against loss or damage arising from:

    (a) the violation of those covenants, conditions, or restrictions on or prior to Date of Policy;
    (b) a forfeiture or reversion of Title from a future violation of those covenants, conditions, or restrictions, including those relating to environmental protection; and
    (c) provisions in those covenants, conditions, or restrictions, including those relating to environmental protection, under which the lien of the Insured Mortgage can be extinguished, subordinated, or impaired.

    As used in paragraph 2(a), the words "covenants, conditions, or restrictions" do not refer to or include any covenant, condition, or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded or filed in the Public Records at Date of Policy and is not referenced in an addendum attached to this policy.

6.  Any easements or servitudes appearing in the Public Records; however, this policy insures against loss or damage arising from (a) the encroachment, at Date of Policy, of the improvements on any easement, and (b) any interference with or damage to existing improvements, including lawns, shrubbery, and trees, resulting from the use of the easements for the purposes granted or reserved.

7.  Any lease, grant, exception, or reservation of minerals or mineral rights or other subsurface substances appearing in the Public Records; however, this policy insures against loss or damage arising from (a) any effect on or impairment of the use of the Land for residential one-to-four family dwelling purposes by reason of such lease, grant, exception or reservation of minerals or mineral rights or other subsurface substances, and (b) any damage to existing improvements, including lawns, shrubbery, and trees, resulting from the future exercise of any right to use the surface of the Land for the extraction or development of the minerals or mineral rights or other subsurface substances so leased, granted, excepted, or reserved. Nothing herein shall insure against loss or damage resulting from contamination, explosion, fire, fracturing, vibration, earthquake or subsidence.

PRELIMINARY REPORT
YOUR REFERENCE:

Ticor Title Company of California
ORDER NO.:  00297700-007-

**EXCEPTIONS**
**(Continued)**

8.      A deed of trust to secure an indebtedness in  the amount shown below,

Amount:                        $513,750.00
Dated:                         May 22, 2007
Trustor/Grantor:               Hourig Tartarian., an unmarried woman
Trustee:                       National City Bank
Beneficiary:                   National City Mortgage, a Division of National City Bank., a National Banking
                               Association
Loan No.:                      Not Set Out
Recording Date:                May 31, 2007
Recording No:                  20071314107, of Official Records

By various assignments, the beneficial interest thereunder is now held of record in:

Assignee:                      J.P. Morgan Mortgage Acquisition Corp.
Recording Date:                May 25, 2012
Recording No.:                 20120781258, of Official Records

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:                       Quality Loan Service Corporation
Recording Date:                June 17, 2014
Recording No.:                 20140622786, of Official Records

A Notice of Default under the terms of said trust deed

Executed By:                   PNC Mortgage, a division of PNC Bank, N.A
Recording Date:                June 17, 2014
Recording No.:                 20140622787, of Official Records

A notice of Trustee's Sale under said deed of trust

Executed By:                   Quality Loan Service Corporation
Time and Place of Sale:        By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766, 10/23/2014 At
                               11:00 AM
Recording Date:                September 24, 2014
Recording No.:                 20141010788, of Official Records

9.      A deed of trust to secure an indebtedness in  the amount shown below,

Amount:                        $99,250.00
Dated:                         May 22, 2007
Trustor/Grantor:               Hourig Tartarian., an unmarried woman
Trustee:                       National City Bank
Beneficiary:                   National City Mortgage, a Division of National City Bank., a National Banking
                               Association
Loan No.:                      Not Set Out
Recording Date:                May 31, 2007
Recording No:                  20071314108, of Official Records

PRELIMINARY REPORT
YOUR REFERENCE:

Ticor Title Company of California
ORDER NO.: 00297700-007-

## EXCEPTIONS
### (Continued)

Assignment of the beneficial interest under said deed of trust which names:

| | |
|---|---|
| Assignee: | Greenwich Investors XXX III LLC |
| Recording Date: | June 21, 2010 |
| Recording No.: | 20100846565, of Official Records |

This Company will require that the original note, the original deed of trust and a properly executed request for full reconveyance together with appropriate documentation (i.e., copy of trust, partnership agreement or corporate resolution) be in this office prior to the close of this transaction if the above-mentioned item is to be paid through this transaction or deleted from a policy of title insurance.

Any demands submitted to us for payoff must be signed by all beneficiaries as shown on said deed of trust, and/or any assignments thereto. In the event said demand is submitted by an agent of the beneficiary(s), we will require the written approval of the demand by the beneficiary(s). Servicing agreements do not constitute approval for the purposes of this requirement.

If no amounts remain due under the obligation a zero balance demand will be required along with the reconveyance documents.

In addition, we require the written approval of said demand by the trustor(s) on said deed of trust or the current owners if applicable.

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

## END OF EXCEPTIONS

---

PRELIMINARY REPORT                                                    Ticor Title Company of California
YOUR REFERENCE:                                                      ORDER NO.:   00297700-007-

# REQUIREMENTS SECTION

1.      In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

        Party(s):                    All Parties

        The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

        NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

## END OF REQUIREMENTS

PRELIMINARY REPORT
YOUR REFERENCE:

Ticor Title Company of California
ORDER NO.:  00297700-007-

# INFORMATIONAL NOTES SECTION

1.      Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

2.      Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Single Family Residence known as 1421 Valencia Avenue, Pasadena Area, CA, to an Extended Coverage Loan Policy.

3.      Note: None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an ALTA Loan Policy, when issued.

4.      NOTE: Ticor Title Company of California will pay Chicago Title Insurance Company 12% of the title premium, as disclosed on lines 1107 and 1108 of the HUD-1.

5.      Note: The policy of title insurance will include an arbitration provision. The company of the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your title insurance coverage.

---

## END OF INFORMATIONAL NOTES

/sj1

PRELIMINARY REPORT
YOUR REFERENCE:

Ficor Title Company of California
ORDER NO.: 00297700-007-

## FIDELITY NATIONAL FINANCIAL
## PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies providing real estate- and loan-related services (collectively, "FNF", "our" or "we") respect and are committed to protecting your privacy. This Privacy Notice lets you know how and for what purposes your Personal Information (as defined herein) is being collected, processed and used by FNF. We pledge that we will take reasonable steps to ensure that your Personal Information will only be used in ways that are in compliance with this Privacy Notice. The provision of this Privacy Notice to you does not create any express or implied relationship, or create any express or implied duty or other obligation, between Fidelity National Financial, Inc. and you. See also **No Representations or Warranties** below.

This Privacy Notice is only in effect for any generic information and Personal Information collected and/or owned by FNF, including collection through any FNF website and any online features, services and/or programs offered by FNF (collectively, the "Website"). This Privacy Notice is not applicable to any other web pages, mobile applications, social media sites, email lists, generic information or Personal Information collected and/or owned by any entity other than FNF.

### How Information is Collected
The types of personal information FNF collects may include, among other things (collectively, "Personal Information"): (1) contact information (*e.g.*, name, address, phone number, email address); (2) demographic information (*e.g.*, date of birth, gender marital status); (3) Internet protocol (or IP) address or device ID/UDID; (4) social security number (SSN), student ID (SIN), driver's license, passport, and other government ID numbers; (5) financial account information; and (6) information related to offenses or criminal convictions.

In the course of our business, we may collect Personal Information about you from the following sources:

- Applications or other forms we receive from you or your authorized representative;
- Information we receive from you through the Website;
- Information about your transactions with or services performed by us, our affiliates, or others; and
- From consumer or other reporting agencies and public records maintained by governmental entities that we either obtain directly from those entities, or from our affiliates or others.

### Additional Ways Information is Collected Through the Website

**Browser Log Files.** Our servers automatically log each visitor to the Website and collect and record certain information about each visitor. This information may include IP address, browser language, browser type, operating system, domain names, browsing history (including time spent at a domain, time and date of your visit), referring/exit web pages and URLs, and number of clicks. The domain name and IP address reveal nothing personal about the user other than the IP address from which the user has accessed the Website.

**Cookies**. From time to time, FNF or other third parties may send a "cookie" to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive and that can be re-sent to the serving website on subsequent visits. A cookie, by itself, cannot read other data from your hard disk or read other cookie files already on your computer. A cookie, by itself, does not damage your system. We, our advertisers and other third parties may use cookies to identify and keep track of, among other things, those areas of the Website and third party websites that you have visited in the past in order to enhance your next visit to the Website. You can choose whether or not to accept cookies by changing the settings of your Internet browser, but some functionality of the Website may be impaired or not function as intended. See the Third Party Opt Out section below.

**Web Beacons**. Some of our web pages and electronic communications may contain images, which may or may not be visible to you, known as Web Beacons (sometimes referred to as "clear gifs"). Web Beacons collect only limited information that includes a cookie number; time and date of a page view; and a description of the page on which the Web Beacon resides. We may also carry Web Beacons placed by third party advertisers. These Web Beacons do not carry any Personal Information and are only used to track usage of the Website and activities associated with the Website. See the Third Party Opt Out section below.

**Unique Identifier**. We may assign you a unique internal identifier to help keep track of your future visits. We may use this information to gather aggregate demographic information about our visitors, and we may use it to personalize the information you see on the Website and some of the electronic communications you receive from us. We keep this information for our internal use, and this information is not shared with others.

**Third Party Opt Out**. Although we do not presently, in the future we may allow third-party companies to serve advertisements and/or collect certain anonymous information when you visit the Website. These companies may use non-personally identifiable information (e.g., click stream information, browser type, time and date, subject of advertisements clicked or scrolled over) during your visits to the Website in order to provide advertisements about products and services likely to be of greater interest to you. These companies typically use a cookie or third party Web Beacon to collect this information, as further described above. Through these technologies, the third party may have access to and use non-personalized information about your online usage activity.

You can opt-out of certain online behavioral services through any one of the ways described below. After you opt-out, you may continue to receive advertisements, but those advertisements will no longer be as relevant to you.

- You can opt-out via the Network Advertising Initiative industry opt-out at http://www.networkadvertising.org.

PRELIMINARY REPORT
YOUR REFERENCE:

Ticor Title Company of California
ORDER NO.:  00297700-007-

- You can opt-out via the Consumer Choice Page at http://www.aboutads.info.
- For those in the U.K., you can opt-out via the IAB UK's industry opt-out at http://www.youronlinechoices.com.
- You can configure your web browser (Chrome, Firefox, Internet Explorer, Safari, etc.) to delete and/or control the use of cookies.

More information can be found in the Help system of your browser. Note: If you opt-out as described above, you should not delete your cookies. If you delete your cookies, you will need to opt-out again.

### Use of Personal Information
Information collected by FNF is used for three main purposes:

- To provide products and services to you or one or more third party service providers (collectively, "Third Parties") who are obtaining services on your behalf or in connection with a transaction involving you.
- To improve our products and services that we perform for you or for Third Parties.
- To communicate with you and to inform you about FNF's, FNF's affiliates and third parties' products and services.

### When Information Is Disclosed By FNF
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Disclosures may include, without limitation, the following:

- To agents, brokers, representatives, or others to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure in connection with an insurance transaction;
- To third-party contractors or service providers who provide services or perform marketing services or other functions on our behalf;
- To law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders; and/or
- To lenders, lien holders, judgment creditors, or other parties claiming an encumbrance or an interest in title whose claim or interest must be determined, settled, paid or released prior to a title or escrow closing.

In addition to the other times when we might disclose information about you, we might also disclose information when required by law or in the good-faith belief that such disclosure is necessary to: (1) comply with a legal process or applicable laws; (2) enforce this Privacy Notice; (3) respond to claims that any materials, documents, images, graphics, logos, designs, audio, video and any other information provided by you violates the rights of third parties; or (4) protect the rights, property or personal safety of FNF, its users or the public.

We maintain reasonable safeguards to keep the Personal Information that is disclosed to us secure. We provide Personal Information and non-Personal Information to our subsidiaries, affiliated companies, and other businesses or persons for the purposes of processing such information on our behalf and promoting the services of our trusted business partners, some or all of which may store your information on servers outside of the United States. We require that these parties agree to process such information in compliance with our Privacy Notice or in a similar, industry-standard manner, and we use reasonable efforts to limit their use of such information and to use other appropriate confidentiality and security measures. The use of your information by one of our trusted business partners may be subject to that party's own Privacy Notice. We do not, however, disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent, in conformity with applicable law, unless such disclosure is otherwise permitted by law.

We also reserve the right to disclose Personal Information and/or non-Personal Information to take precautions against liability, investigate and defend against any third-party claims or allegations, assist government enforcement agencies, protect the security or integrity of the Website, and protect the rights, property, or personal safety of FNF, our users or others.

We reserve the right to transfer your Personal Information, as well as any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets. We also cannot make any representations regarding the use or transfer of your Personal Information or other information that we may have in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors, and you expressly agree and consent to the use and/or transfer of your Personal Information or other information in connection with a sale or transfer of some or all of our assets in any of the above described proceedings. Furthermore, we cannot and will not be responsible for any breach of security by any third parties or for any actions of any third parties that receive any of the information that is disclosed to us.

### Information From Children
We do not collect Personal Information from any person that we know to be under the age of thirteen (13). Specifically, the Website is not intended or designed to attract children under the age of thirteen (13). You affirm that you are either more than 18 years of age, or an emancipated minor, or possess legal parental or guardian consent, and are fully able and competent to enter into the terms, conditions, obligations, affirmations, representations, and warranties set forth in this Privacy Notice, and to abide by and comply with this Privacy Notice. In any case, you affirm that you are over the age of 13, as **THE WEBSITE IS NOT INTENDED FOR CHILDREN UNDER 13 THAT ARE UNACCOMPANIED BY HIS OR HER PARENT OR LEGAL GUARDIAN.**

Parents should be aware that FNF's Privacy Notice will govern our use of Personal Information, but also that information that is voluntarily given by children – or others – in email exchanges, bulletin boards or the like may be used by other parties to generate unsolicited communications. FNF encourages all parents to instruct their children in the safe and responsible use of their Personal Information while using the Internet.

## Privacy Outside the Website

The Website may contain various links to other websites, including links to various third party service providers. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites. Other than under agreements with certain reputable organizations and companies, and except for third party service providers whose services either we use or you voluntarily elect to utilize, we do not share any of the Personal Information that you provide to us with any of the websites to which the Website links, although we may share aggregate, non-Personal Information with those other third parties. Please check with those websites in order to determine their privacy policies and your rights under them.

## European Union Users

If you are a citizen of the European Union, please note that we may transfer your Personal Information outside the European Union for use for any of the purposes described in this Privacy Notice. By providing FNF with your Personal Information, you consent to both our collection and such transfer of your Personal Information in accordance with this Privacy Notice.

## Choices With Your Personal Information

Whether you submit Personal Information to FNF is entirely up to you. You may decide not to submit Personal Information, in which case FNF may not be able to provide certain services or products to you.

You may choose to prevent FNF from disclosing or using your Personal Information under certain circumstances ("opt out"). You may opt out of any disclosure or use of your Personal Information for purposes that are incompatible with the purpose(s) for which it was originally collected or for which you subsequently gave authorization by notifying us by one of the methods at the end of this Privacy Notice. Furthermore, even where your Personal Information is to be disclosed and used in accordance with the stated purposes in this Privacy Notice, you may elect to opt out of such disclosure to and use by a third party that is not acting as an agent of FNF. As described above, there are some uses from which you cannot opt-out.

Please note that opting out of the disclosure and use of your Personal Information as a prospective employee may prevent you from being hired as an employee by FNF to the extent that provision of your Personal Information is required to apply for an open position.

If FNF collects Personal Information from you, such information will not be disclosed or used by FNF for purposes that are incompatible with the purpose(s) for which it was originally collected or for which you disclosure and use.

You may opt out of online behavioral advertising by following the instructions set forth above under the above section "Additional Ways That Information Is Collected Through the Website," subsection "Third Party Opt Out."

## Access and Correction

To access your Personal Information in the possession of FNF and correct inaccuracies of that information in our records, please contact us in the manner specified at the end of this Privacy Notice. We ask individuals to identify themselves and the information requested to be accessed and amended before processing such requests, and we may decline to process requests in limited circumstances as permitted by applicable privacy legislation.

## Your California Privacy Rights

Under California's "Shine the Light" law, California residents who provide certain personally identifiable information in connection with obtaining products or services for personal, family or household use are entitled to request and obtain from us once a calendar year information about the customer information we shared, if any, with other businesses for their own direct marketing uses. If applicable, this information would include the categories of customer information and the names and addresses of those businesses with which we shared customer information for the immediately prior calendar year (e.g., requests made in 2015 will receive information regarding 2014 sharing activities).

To obtain this information on behalf of FNF, please send an email message to privacy@fnf.com with "Request for California Privacy Information" in the subject line and in the body of your message. We will provide the requested information to you at your email address in response.

Please be aware that not all information sharing is covered by the "Shine the Light" requirements and only information on covered sharing will be included in our response.

Additionally, because we may collect your Personal Information from time to time, California's Online Privacy Protection Act requires us to disclose how we respond to "do not track" requests and other similar mechanisms. Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

## No Representations or Warranties

By providing this Privacy Notice, Fidelity National Financial, Inc. does not make any representations or warranties whatsoever concerning any products or services provided to you by its majority-owned subsidiaries. In addition, you also expressly agree that your use of the Website is at your own risk. Any services provided to you by Fidelity National Financial, Inc. and/or the Website are provided "as is" and "as available" for your use, without representations or warranties of any kind, either express or implied, unless such warranties are legally incapable of exclusion. Fidelity National Financial, Inc. makes no representations or warranties that any services provided to you by it or the Website, or any services offered in connection with the Website are or will remain uninterrupted or error-free, that defects will be corrected, or that the web pages on or accessed through the Website, or the servers used in connection with the Website, are or will remain free from any viruses, worms, time bombs, drop dead devices, Trojan horses or other harmful components. Any liability of Fidelity National Financial, Inc. and your exclusive remedy with respect to the use of any product or service provided by Fidelity National Financial, Inc.

PRELIMINARY REPORT
YOUR REFERENCE:

<span style="color:red">Ticor Title Company of California
ORDER NO.:  00297700-007-</span>

including on or accessed through the Website, will be the re-performance of such service found to be inadequate.

**<u>Your Consent To This Privacy Notice</u>**
By submitting Personal Information to FNF, you consent to the collection and use of information by us as specified above or as we otherwise see fit, in compliance with this Privacy Notice, unless you inform us otherwise by means of the procedure identified below. If we decide to change this Privacy Notice, we will make an effort to post those changes on the Website. Each time we collect information from you following any amendment of this Privacy Notice will signify your assent to and acceptance of its revised terms for all previously collected information and information collected from you in the future. We may use comments, information or feedback that you may submit in any manner that we may choose without notice or compensation to you.

If you have additional questions or comments, please let us know by sending your comments or requests to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer
(888) 934-3354
privacy@fnf.com

Copyright © 2015. Fidelity National Financial, Inc. All Rights Reserved.

EFFECTIVE AS OF: JANUARY 6, 2015

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the field rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for each discount. These discounts only apply to transaction involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Company**                      **FNF Underwriter**
TTCC - Ticor Title Company of California                CTIC - Chicago Title Insurance Company

**Available Discounts**
**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (CTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge within the following time period from the date of the report.

**DISASTER LOANS (CTIC)**
The charge for a lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 40% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

**EMPLOYEE RATE (TTCC and CTIC)**
No charge shall be made to employees (including employees on approved retirement) of the Company or its underwritten, subsidiary title companies for policies or escrow services in connection with financing, refinancing, sale or purchase of the employees' bona fide home property. Waiver of such charges is authorized only in connection with those costs which the employee would be obligated to pay, by established custom, as a party to the transaction.

**Attachment One (Revised 06-05-14)**

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990 (04-08-14)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a)  Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b)  Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.  Defects, liens, encumbrances, adverse claims or other matters:
    (a)  whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b)  not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c)  resulting in no loss or damage to the insured claimant;
    (d)  attaching or created subsequent to Date of Policy; or
    (e)  resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4.  Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5.  Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.  Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE–SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5.  (a) Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6.  Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a.  building;
    b.  zoning;

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, Attachment One (Revised 06-03-11)

    c.   land use;
    d.   improvements on the Land;
    e.   land division; and
    f.   environmental protection.
This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.

2.   The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes.  This Exclusion does not limit the coverage described in Covered Risk 14 or 15.

3.   The right to take the Land by condemning it.  This Exclusion does not limit the coverage described in Covered Risk 17.

4.   Risks:
    a.   that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.   that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.   that result in no loss to You; or
    d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.

5.   Failure to pay value for Your Title.

6.   Lack of a right:
    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.   in streets, alleys, or waterways that touch the Land.
This Exclusion does not limit the coverage described in Covered Risk 11 or 21.

7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
    •   For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)
## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)   the character, dimensions, or location of any improvement erected on the Land;
    (iii)   the subdivision of land; or
    (iv)   environmental protection;
or the effect of any violation of these laws, ordinances, or governmental regulations.  This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.   Rights of eminent domain.  This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.   Defects, liens, encumbrances, adverse claims, or other matters
    (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)   resulting in no loss or damage to the Insured Claimant;

© **California Land Title Association. All rights reserved.**
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, Attachment One (Revised 06-05-14)

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or

    (b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

Except as provided in Schedule B - Part II, this policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

## PART I

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

        (i)  the occupancy, use, or enjoyment of the Land;

        (ii)  the character, dimensions, or location of any improvement erected on the Land;

        (iii)  the subdivision of land; or

        (iv)  environmental protection;

      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c)  resulting in no loss or damage to the Insured Claimant;

    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, A Premier One (Revised 06-08-13)

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.
7. Variable exceptions such as taxes, easements, CC&R's, etc. shown here.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (12-02-13)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

© California Land Title Association. All rights reserved.
The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.

CLTA PRELIMINARY REPORT FORM, Attachment One (Revised 06-05-14)

9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a)  a fraudulent conveyance or fraudulent transfer, or

    (b)  a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

10.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.

11.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any  other substances.

© **California Land Title Association. All rights reserved.**

The use of this Form is restricted to CLTA subscribers in good standing as of the date of use. All other uses are prohibited. Reprinted under license or express permission from the California Land Title Association.



This map should be used for reference purposes only. No liability is assumed for the accuracy of the data shown. Parcels may not comply with local subdivision or building ordinances.

**STATEMENT OF INFORMATION**

CONFIDENTIAL INFORMATION STATEMENT TO BE USED IN CONNECTION WITH ORDER NO: 00297700-007-

*COMPLETION OF THIS FORM WILL EXPEDITE YOUR ORDER AND WILL HELP PROTECT YOU.*

---

**THE STREET ADDRESS of the property in this transaction is:**

IF NONE LEAVE BLANK

| ADDRESS: | CITY: |
|---|---|

IMPROVEMENTS:  ○ SINGLE RESIDENCE      ○ MULTIPLE RESIDENCE      ○ COMMERCIAL
OCCUPIED BY:    ○ OWNER                        ○ LESSEE                           ○ TENANTS
ANY PORTION OF NEW LOAN FUNDS TO BE USED FOR CONSTRUCTION:   ○ YES      ○ NO

---

| **NAME** | **SPOUSES NAME** |
|---|---|
| FIRST          MIDDLE          LAST | FIRST          MIDDLE          LAST |
| BIRTHPLACE                    BIRTH DATE | BIRTHPLACE                    BIRTH DATE |
| I HAVE LIVED IN CALIFORNIA SINCE     SOCIAL SECURITY NUMBER | I HAVE LIVED IN CALIFORNIA SINCE     SOCIAL SECURITY NUMBER |
| DRIVER'S LICENSE NO. | DRIVER'S LICENSE NO. |
| WIFE'S MAIDEN NAME: | |
| WE WERE MARRIED ON | AT |

---

**RESIDENCE(S) FOR LAST 10 YEARS**

| NUMBER AND STREET | CITY | FROM | TO |
|---|---|---|---|
| NUMBER AND STREET | CITY | FROM | TO |
| NUMBER AND STREET | CITY | FROM | TO |
| NUMBER AND STREET | CITY | FROM | TO |

---

**OCCUPATION(S) FOR LAST 10 YEARS**

**HUSBAND**

| PRESENT OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
|---|---|---|---|
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |

**WIFE**

| PRESENT OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
|---|---|---|---|
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |

---

**FORMER MARRIAGES:** IF NO FORMER MARRIAGES, WRITE "NONE":

NAME OF FORMER SPOUSE

IF DECEASED:  DATE                                              WHERE

---

**CURRENT LOAN ON PROPERTY**

PAYMENTS ARE BEING MADE TO:                                    2.

1.                                                                              3.

HOMEOWNERS ASSOCIATION                                    NUMBER:

---

DATE _____   SIGNATURE _____

HOME PHONE _____   BUSINESS PHONE _____

MISC0008 (Rev. 09/15/2011)

# EXHIBIT "4"



# APPRAISAL OF REAL PROPERTY

## LOCATED AT:
1421 Valencia Ave
TRACT # 6433 LOT 84
Pasadena, CA 91104

## FOR:
HOURY TARTARIAN
1421 VALENCIA AVE PASADENA CA 91104
**Email:** houryt1@gmail.com

## AS OF:
01/29/2015

## BY:
ERIC R EVANS
7597 CHALK HILL PLACE RANCHO CUCAMONGA, CA. 91739
**Website:** www.courtenayappraisalservices.com
**Email:** eevans44@yahoo.com
**Fax:** (909) 728-4527
**Phone:** (310) 502-2862

| Borrower/Client | Tartarian, Houry | | | File No. 1421 | |
|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | |
| City | Pasadena | County LOS ANGELES | State CA | Zip Code | 91104 |
| Lender | HOURY TARTARIAN | | | | |

# TABLE OF CONTENTS



Cover Page ........................................................................................................................................... 1
Services Invoice .................................................................................................................................. 2
Letter of Transmittal ........................................................................................................................... 3
Summary of Salient Features ............................................................................................................ 4
URAR ..................................................................................................................................................... 5
Additional Listings 1-3 ....................................................................................................................... 11
Market Conditions Addendum to the Appraisal Report .............................................................. 12
Subject Photos .................................................................................................................................... 13
Photograph Addendum ...................................................................................................................... 14
Photograph Addendum ...................................................................................................................... 15
Comparable Photos 1-3 ..................................................................................................................... 16
Listings Photos 1-3 ............................................................................................................................ 17
Location Map ........................................................................................................................................ 18
Plat Map ................................................................................................................................................ 19
Zoning Map ........................................................................................................................................... 20
UAD Definitions List Pg 1 .................................................................................................................. 21
UAD Definitions List Pg 2 .................................................................................................................. 22
UAD Definitions List Pg 3 .................................................................................................................. 23
UAD Definitions List Pg 4 .................................................................................................................. 24
E & O ..................................................................................................................................................... 25
Appraisal License ............................................................................................................................... 26

FROM:
COURTENAY APPRAISAL SERVICES
7597 CHALK HILL PL RANCHO CUCAMONGA, CA. 917
**Website:** www.courtenayappraisalservices.com
**Telephone Number:** (310) 502-2862
**Fax:** (909) 728-4527
**Email:** eevans44@yahoo.com

| INVOICE | DATE | REFERENCE |
|---------|------|-----------|
| 1421 | 01/29/2015 | 1421 |

TO:
HOURY TARTARIAN
1421 VALENCIA AVE PASADENA CA 91104

WE NOW OFFER ONLINE ORDERING AT
WWW.COURTENAYAPPRAISALSERVICES.COM
IT HAS BEEN A PLEASURE TO ASSIST YOU.

**Attn:**
**Telephone Number:** (818) 441-9000
**Fax Number:**
**Email:** houryt1@gmail.com

| DESCRIPTION | AMOUNT |
|-------------|--------|
| Purchaser / Borrower: Tartarian, Houry<br>Property Address: 1421 Valencia Ave<br>City: Pasadena<br>Zip: 91104-2028<br>County: LOS ANGELES<br>Legal Description: TRACT # 6433 LOT 84<br><br><br>PAID<br><br><br>FULL APPRAISAL NEW FANNIE MAE FORM 1004 UAD VERSION 09/2011 | 400.00 |

**PLEASE NOTE:** ANY RETURNED CHECK FEE $25.00 PER OCCURRENCE. ANY BALANCE REMAINING
AFTER 30 DAYS FROM PROPERTY INSPECTION IS SUBJECT TO A 10% LATE FEE.

| | |
|---|---|
| Subtotal | $ 0.00 |
| Late Fee | $ |
| **TOTAL** | $ 0.00 |



COURTENAY APPRAISAL SERVICES
7597 CHALK HILL PL RANCHO CUCAMONGA, CA. 91739
WEBSITE: www.courtenayappraisalservices.com
PHONE: (310) 502-2862 / FAX: (909) 728-4527


JAN 29, 2015


HOURY TARTARIAN
1421 VALENCIA AVE PASADENA CA 91104


Re: Property:     1421 Valencia Ave
                  Pasadena, CA 91104
    Borrower:     Tartarian, Houry
    File No.:     1421


In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional service to you.


Sincerely,

*Eric Evans*

ERIC R EVANS
APPRAISER
AL036354 CA

## SUMMARY OF SALIENT FEATURES

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 1421 Valencia Ave |
| | Legal Description | TRACT # 6433 LOT 84 |
| | City | Pasadena |
| | County | LOS ANGELES |
| | State | CA |
| | Zip Code | 91104 |
| | Census Tract | 4613.00 |
| | Map Reference | 566/E1 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ 0 |
| | Date of Sale | |

| CLIENT | | |
|---|---|---|
| | Borrower/Client | Tartarian, Houry |
| | Lender | HOURY TARTARIAN |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 1,072 |
| | Price per Square Foot | $ |
| | Location | N;Res;Res |
| | Age | 89 |
| | Condition | C4 |
| | Total Rooms | 5 |
| | Bedrooms | 2 |
| | Baths | 1.0 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | ERIC R EVANS |
| | Date of Appraised Value | 01/29/2015 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 500,000 |

# Uniform Residential Appraisal Report

1421
File # 1421

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address  1421 Valencia Ave | City Pasadena    State CA  Zip Code 91104 |
| Borrower  Tartarian, Houry | Owner of Public Record  Tartarian, Houry    County LOS ANGELES |

Legal Description   TRACT # 6433 LOT 84
Assessor's Parcel #   5853-020-011        Tax Year  2015        R.E. Taxes $  6,257
Neighborhood Name  PASADENA        Map Reference  566/E1        Census Tract 4613.00
Occupant ☒ Owner ☐ Tenant ☐ Vacant        Special Assessments $  0        ☐ PUD  HOA $ 0        ☐ per year  ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  MARKET VALUE (FOR CHAPTER 13)
Lender/Client  HOURY TARTARIAN        Address   1421 VALENCIA AVE PASADENA CA 91104
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s).   Mls and county records does not indicate a transfer within the past 12 months or at the time of
inspection. Last Transfer Date: 07/13/2004. Sale Price: $497,000.00 Doc #1775210 Grant deed. Seller: Shnorhokian, Vicken.
I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not
performed.

Contract Price $ 0        Date of Contract        Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)  COUNTY REC/MLS
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☒ Urban ☐ Suburban ☐ Rural | | | Property Values ☒ Increasing ☐ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit | 50 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | | | 2-4 Unit | 10 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 455 Low | 5 | Multi-Family | 10 % |
| Neighborhood Boundaries    THE SUBJECT IS BOUND TO THE **NORTH** BY ANGELES NAT FOREST, TO | | | | | | 695 High | 105 | Commercial | 10 % |
| THE **SOUTH** BY ORANGE GRV BL, TO THE **EAST** BY ALTADENA DR & TO THE **WEST** BY HILL AV | | | | | | 500 Pred. | 65 | Other | 20 % |

Neighborhood Description    HOME OF THE HISTORIC ROSE BOWL & PARADE, THE NEIGHBORHOOD CONSISTS MOSTLY OF SFR'S OF
DETACHED HOUSES. THESE SFR'S ARE OF AV TO GD & VARY IN SIMILAR SIZE, CONSTRUCTION & DESIGN. EATON WASH, ALTADENA
DR & WASHINGTON BL THOROUGHFARE HAS LITTLE OR NO AFFECT THE MARKETABILITY OF THE SUBJ. THE SUBJ IS IN CLOSE PRO
Market Conditions (including support for the above conclusions)    THERE SEEMS TO BE GENERALLY AVERAGE TO GOOD MARKET CONDITIONS.
THERE ARE NO LOAN DISCOUNTS AND CONCESSIONS PREVALENT IN THE CURRENT MARKET. CONVENTIONAL AND GOVERNMENT
FINANCING IS PREVALENT IN THIS AREA. SUPPLY AND DEMAND AND PROPERTY VALUES SEEM TO BE INCREASING. THE NUMBER

Dimensions  PLEASE SEE ATTACHED PLAT MAP        Area  7,004 SF        Shape  RECTANGULAR        View  N;Mtn;Res
Specific Zoning Classification  LCR175        Zoning Description  Pasadena Municipal Code of Ordinances Title 17 Chapter 17
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?  ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street  ASPHALT | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley  NONE | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone  X        FEMA Map #  06037C1400F        FEMA Map Date  09/26/2008
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

| General Description | | Foundation | | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☒ Crawl Space | | Foundation Walls | CONCRETE/AVG | Floors | CARPET/TILE/AVG |
| # of Stories | 1 | ☐ Full Basement ☐ Partial Basement | | Exterior Walls | STUCCO/AVG | Walls | DRYWALL/AVG |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | Basement Area | 0  sq.ft. | Roof Surface | COMP SHNG/AVG | Trim/Finish | HDWD/PAINT/AVG |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Basement Finish | 0  % | Gutters & Downspouts | OVERHANG/AVG | Bath Floor | TILE/AVG |
| Design (Style) | Tudor/Avg | ☐ Outside Entry/Exit ☐ Sump Pump | | Window Type | HR SLD/DBL H/AVG | Bath Wainscot | TILE/AVG |
| Year Built | 1926 | Evidence of ☐ Infestation  NONE NOT | | Storm Sash/Insulated | NONE/UNKNOWN | Car Storage | None |
| Effective Age (Yrs) | 40 | ☐ Dampness ☐ Settlement | | Screens | ALUMINUM/AVG | ☒ Driveway  # of Cars | 2 |
| Attic ☐ None | | Heating ☐ FWA ☐ HWBB ☐ Radiant | Amenities | ☐ Woodstove(s) # 0 | Driveway Surface | CONCRETE | |
| ☐ Drop Stair ☐ Stairs | | ☒ Other FAU  Fuel  GAS | | ☒ Fireplace(s) #  1 ☒ Fence BLK/IRON | | ☐ Garage  # of Cars | 0 |
| ☐ Floor ☐ Scuttle | | Cooling ☐ Central Air Conditioning | | ☒ Patio/Deck  YES ☐ Porch  YES | | ☐ Carport  # of Cars | 0 |
| ☐ Finished ☐ Heated | | ☐ Individual  N/A ☒ Other  C.FANS | | ☐ Pool  NONE ☐ Other  NONE | | ☐ Att. ☐ Det. ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☒ Other (describe)  LAUNDRY ROOM
Finished area **above** grade contains:        5  Rooms        1.0  Bedrooms        1,072  Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).    NO SPECIAL ENERGY EFFICIENT ITEMS NOTED.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    C4;Kitchen-updated-six to ten years
ago;Bathrooms-updated-six to ten years ago;THE SUBJECT IS OF AVERAGE QUALITY CONSTRUCTION, THAT HAS BEEN MAINTAINED IN
AVERAGE CONDITION. NO FUNCTIONAL OR EXTERNAL INADEQUACIES NOTED. THE SUBJECT HAS A KITCHEN FEATURING TILE
COUNTERS, OAK CABINETS & GE APPLIANCES. CEILING FANS, CARPET & TILE FLOORING THROUGHOUT. BATHROOM W/GRANITE
SINKTOP, WOOD CABINETS, TILE WAINSCOT AND VANITY MIRROR. LARGE LOT W/FRUIT TREES AND PATIO FOR ENTERTAINMENT.
Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No  If Yes, describe
PLEASE NOTE: THE APPRAISER ONLY PERFORMED A VISUAL INSPECTION OF ACCESSIBLE AREAS AND THE APPRAISAL CANNOT BE
RELIED UPON TO DISCLOSE CONDITIONS AND/OR DEFECTS IN THE PROPERTY. THE CLIENT IS URGED TO RETAIN AN EXPERT IN
THE FIELD IF DESIRED.
Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe

1421
File # 1421

# Uniform Residential Appraisal Report

| | | |
|---|---|---|
| There are __6__ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 465,000 to $ 725,000 . | | |
| There are __21__ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 455,000 to $ 695,000 . | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1421 Valencia Ave Pasadena, CA 91104 | 1763 E Elizabeth St Pasadena, CA 91104 | | 1811 Beverly Dr Pasadena, CA 91104 | | 2063 Jefferson Dr Pasadena, CA 91104 | |
| Proximity to Subject | | 0.86 miles W | | 0.78 miles W | | 0.47 miles W | |
| Sale Price | $ 0 | $ 540,000 | | $ 441,500 | | $ 591,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 373.44 sq.ft. | | $ 535.80 sq.ft. | | $ 591.00 sq.ft. | |
| Data Source(s) | | APN #5851-019-010;DOM 0 | | MLS #SR14198529CN;DOM 39 | | MLS #AR14237319MR;DOM 6 | |
| Verification Source(s) | | DOC #98708 | | DOC #1236100 | | DOC #1253335 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth Conv;0 | | Estate Cash;0 | | ArmLth Cash;0 | |
| Date of Sale/Time | | s01/15;c01/15 | | s10/14;c09/14 | | s11/14;c11/14 | |
| Location | N;Res;Res | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 7,004 SF | 7,891 SF | 0 | 6,795 SF | 0 | 4,076 SF | +2,928 |
| View | N;Mtn;Res | N;Mtn;Res | | N;Mtn;Res | | N;Mtn;Res | |
| Design (Style) | DT1;Tudor/Avg | DT1;Traditional/A | 0 | DT1;Spanish/Av | 0 | DT1;Cottage/Av | 0 |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 89 | 70 | -5,700 | 90 | 0 | 88 | 0 |
| Condition | C4 | C4 | | C5 | +20,000 | C3 | -20,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 5  2  1.0 | 6  3  2.0 | -5,000 | 5  2  1.0 | | 5  2  1.0 | |
| Gross Living Area | 1,072 sq.ft. | 1,446 sq.ft. | -16,830 | 824 sq.ft. | +11,160 | 1,000 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/AC | FAU/AC | | FAU/AC | | FAU/AC | |
| Energy Efficient Items | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Garage/Carport | 2dw | 1gd2dw | -5,000 | 2gd2dw | -10,000 | 2gd2dw | -10,000 |
| Porch/Patio/Deck | PORCH/PATIO | PORCH/PATIO | | PORCH/PATIO | | PORCH/PATIO | |
| Balcony | NONE | NONE | | NONE | | NONE | |
| Fireplace/Woodstove | 1-FPL | NONE | +5,000 | 1-FPL | | 1-FPL | |
| Pool/Spa | NONE | NONE | | NONE | | NONE | |
| Net Adjustment (Total) | | + ☒ - | $ -27,530 | ☒ + - | $ 21,160 | + ☒ - | $ -27,072 |
| Adjusted Sale Price of Comparables | | Net Adj.  5.1 % Gross Adj.  7.0 % | $ 512,470 | Net Adj.  4.8 % Gross Adj.  9.3 % | $ 462,660 | Net Adj.  4.6 % Gross Adj.  5.6 % | $ 563,928 |

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain PER COUNTY RECORDS, MULTIPLE LISTING SERVICES AND NATIONAL DATA COLLECTIVE. JANUARY 30, 2015.

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) PER COUNTY RECORDS, MULTIPLE LISTING SERVICES AND NATIONAL DATA COLLECTIVE. JANUARY 30, 2015.
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) PER COUNTY RECORDS, MULTIPLE LISTING SERVICES AND NATIONAL DATA COLLECTIVE. JANUARY 30, 2015.
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | 10/01/2014 |
| Price of Prior Sale/Transfer | | | | $440,000 |
| Data Source(s) | PER COUNTY RECORDS/M | PER COUNTY RECORDS/M | PER COUNTY RECORDS/M | PER COUNTY RECORDS/M |
| Effective Date of Data Source(s) | 01/30/2015 | 01/30/2015 | 01/30/2015 | 01/30/2015 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Mls and county records does not indicate a transfer within the past 12 months or at the time of inspection. Last Transfer Date: 07/13/2004. Sale Price: $497,000 Doc #1775210 Grant deed. Seller: Shnorhokian, Vicken. Comp 1: It seems this comparable was not an nlms listed sale, standard sale type & appears to be an arms length transaction. Doc #2152538 Grand deed. Comp 2: Has not been listed for sale within the past 12 mths. Last Transfer Date: 09/19/1974 Sale Price: $20,000. Deed (Reg). Probale sale, per mls (& interior photos), this comp needs a lot of work & appears to be a fixer-upper. Comp 3: The previous transaction took place approx 1 mth before current transaction per ndcdata. Doc #1040027Gd. Standard sale, this comp has been upgraded & remolded since prior sale.
Summary of Sales Comparison Approach    COMPARABLES 1 & 3 MOST RECENT SALES IN CLOSE PROXIMITY. ALL COMPS SALES WERE GIVEN EQUAL WEIGHT IN ESTABLISHING VALUE FOR THE SUBJECT. THE COMPS USED WERE THE BEST COMPS AVAILABLE SIMILAR TO THE SUBJ IN SIZE & LOCATION, AT THE TIME OF THE APPRAISAL. THE SALES UTILIZED WITHIN THE AREA WERE ALL CONSIDERED GOOD COMPS. THE COMPS WERE VERIFIED BY NDCDATA & MLS. THE FOLLOWING ADJUSTMENTS WERE WARRANTED: BUILDING AREA WAS ADJUSTED AT $45/SF. NO ADJUSTMENT WAS MADE IF THE LIVING AREA DIFFERENCE WAS LESS THAN 100 SF. ACTUAL AGE WAS ADJUSTED AT $300/YEAR IF DIFFERENCE WAS GREATER THAN 10 YEARS. LAND AREA WAS ADJUSTED AT $1/SF. NO ADJUSTMENT WAS MADE IF THE LAND AREA DIFFERENCE WAS LESS THAN 1000 SF. FULL BATHS, GARAGE & FPL WERE ADJUSTED @ 5000/EACH. CONDITION ADJUSTMENT-$20000. NO BEDRM ADJUSTMENT, AS BUYERS ARE NOT PAYING MORE FOR BEDRMS VS SF
Indicated Value by Sales Comparison Approach $ 500,000

| | | | |
|---|---|---|---|
| Indicated Value by: Sales Comparison Approach $ 500,000 | Cost Approach (if developed) $ 501,605 | Income Approach (if developed) $ | |

MOST EMPHASIS WAS PLACED ON THE SALES COMPARISON APPROACH TO VALUE. THE COST APPROACH WAS GIVEN SUPPORTIVE CONSIDERATION. THE INCOME (GRM) APPROACH WAS NOT CONSIDERED AS HOMES ARE NORMALLY NOT PURCHASED FOR INVESTMENT PURPOSES.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: THIS REPORT IS INTENDED TO BE A SUMMARY REPORT OF A COMPLETE APPRAISAL OF THE SUBJECT PROPERTY, IN COMPLIANCE WITH THE UNIFORM

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 500,000 , as of 01/29/2015 , which is the date of inspection and the effective date of this appraisal.

# Uniform Residential Appraisal Report

1421
File # 1421

**• UNIFORM RESIDENTIAL APPRAISAL REPORT:** ADVERSE ENVIRONMENTAL CONDITIONS:
UNLESS OTHERWISE STATED IN THIS REPORT, THE EXISTENCE OF HAZARDOUS MATERIALS WHICH MAY OR MAY NOT BE PRESENT ON THIS PROPERTY WAS NOT OBSERVED BY THE APPRAISER, THE APPRAISER HAS NO KNOWLEDGE OF THE EXISTENCE OF SUCH MATERIALS ON OR IN THE PROPERTY. THE APPRAISER, HOWEVER IS NOT QUALIFIED TO DETECT SUCH SUBSTANCES. THE PRESENCE OF SUBSTANCES SUCH AS ASBESTOS, UREAFORMALDEHYDE FOAM INSULATION AND ANY OTHER POTENTIALLY HAZARDOUS MATERIALS THAT MAY AFFECT THE VALUE OF THE PROPERTY. THE VALUE ESTIMATED IS PREDICATED ON THE ASSUMPTION THAT THERE IS NO SUCH MATERIAL ON OR IN THE PROPERTY THAT WOULD CAUSE A LOSS IN VALUE. NO RESPONSIBILITY IS ASSUMED FOR SUCH CONDITIONS OR FOR ANY EXPERTIZE OR ENGINEERING KNOWLEDGE REQUIRED TO DISCOVER THEM. THE CLIENT IS URGED TO RETAIN AN EXPERT IN THE FIELD IF DESIRED.

**PLEASE NOTE:** THIS IS NOT A HOME INSPECTION. THE APPRAISER ONLY PERFORMED A VISUAL INSPECTION OF ACCESSIBLE AREAS AND THE APPRAISAL CANNOT BE RELIED UPON TO DISCLOSE CONDITIONS AND/OR DEFECTS IN THE PROPERTY.

**PLEASE NOTE:** SIMPLY BECAUSE A BORROWER OR THIRD PARTY MAY RECEIVE A COPY OF THE APPRAISAL DOES NOT MEAN THAT THE BORROWER OR THIRD PARTY IS AN INTENDED USER AS THAT TERM IS DEFINED IN THE URAR FORM.

**EXTRAORDINARY ASSUMPTIONS:**
IT IS ASSUMED THAT ALL STRUCTURES, GIVEN VALUE IN THIS REPORT ARE LEGALLY PERMITTED AS STATED. IT IS ASSUMED THAT THERE ARE NO UNKNOWN GEOLOGICAL AND OR ENVIRONMENTAL ADVERSE ISSUES. THE TYPE UTILITIES AND CONDITION ARE ASSUMED TO BE AS STATED. THE PHYSICAL CHARACTERISTICS OF THE COMPARABLES WERE EITHER VERIFIED THROUGH COUNTY RECORDS, MLS, AND OR HOMEOWNER VERIFICATION, ASSUMED TO BE AS STATED. THE COMPARABLES ARE ASSUMED TO HAVE NO SALES CONCESSIONS. THE CURRENT ZONING AND THE FLOOD ZONE INFORMATION ARE ASSUMED TO BE AS STATED IN THIS REPORT. THE SUBJECT SITE IS ASSUMED TO HAVE NO UNKNOWN FLOODING PROBLEMS. THE COST APPROACH FIGURES ARE ASSUMED TO BE AS STATED IN THIS REPORT. THE SITE IS ASSUMED TO HAVE NO UNKNOWN EASEMENTS. IF ANY OF THESE ITEMS ARE FOUND TO BE NOT TRUE AND OR CORRECT, I RESERVE THE RIGHT TO CHANGE MY APPRAISAL.

Note: The following statement is the Certification #23 as per The Appraisal Statndards Board, for USPAP Compliance:
"The Intended User of this appraisal report is the Lender/Client. The Intended Use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser".

(left margin: ADDITIONAL COMMENTS)

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   THE INDICATED LAND VALUE, IN THIS METHOD WAS BASED UPON AN EXTRACTION PROCESS WHICH IS CONSIDERED TO BE PROFESSIONALLY ACCEPTABLE, HOWEVER, IT IS INFERIOR TO THE DIRECT SALES COMPARISON MEANS OF ESTIMATING LAND VALUE. COST FIGURES NOT TO BE USED FOR INSURANCE PURPOSES. THE DEFINITION OF MARKET VALUE ON PG 4 OF THIS REPORT MAY NOT BE CONSISTENT WITH THE DEF

| | | |
|---|---|---|
| ESTIMATED ☒ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ..........................=$ | 225,000 |
| Source of cost data  MARSHALL & SWIFT | DWELLING    1,072  Sq.Ft. @ $  265.00  .........=$ | 284,080 |
| Quality rating from cost service  AVG    Effective date of cost data  02/01/2007 | 0  Sq.Ft. @ $  .........=$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | PORCH,PATIO,STORAGE .........=$ | 15,000 |
| PHYSICAL DEPRECIATION IS BASED ON THE AGE LIFE METHOD. | Garage/Carport    0  Sq.Ft. @ $  .........=$ | |
| BASED ON A LIFE OF 60 YEARS AND AN EFFECTIVE AGE OF 40 | Total Estimate of Cost-New .........=$ | 299,080 |
| YEARS, A 66.67 PHYSICAL DEPRECIATION ESTIMATE WAS | Less  Physical  Functional  External | |
| UTILIZED. THE SUBJECT PROPERTY HAS AN ESTIMATED 20 | Depreciation    47,475 =$( | 47,475) |
| YEARS OF ECONOMIC LIFE REMAINING. | Depreciated Cost of Improvements .........=$ | 251,605 |
| | "As-is" Value of Site Improvements .........=$ | 25,000 |
| Estimated Remaining Economic Life (HUD and VA only)    20  Years | INDICATED VALUE BY COST APPROACH .........=$ | 501,605 |

(left margin: COST APPROACH)

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $ | X  Gross Rent Multiplier | = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

(left margin: INCOME)

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No    Unit type(s)  ☐ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source
Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

(left margin: PUD INFORMATION)

Freddie Mac Form 70 March 2005                UAD Version 9/2011    Page 3 of 6                Fannie Mae Form 1004 March 2005

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report

1421
File # 1421

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:**  The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.  The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.  The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.  The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.  The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.  The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.  The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

1421
File # 1421

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

1421

# Uniform Residential Appraisal Report

File # 1421

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.  I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.  I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.  The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.  This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report  was prepared.

5.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER    ERIC R EVANS | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _Eric Evans_ | Signature _____ |
| Name   ERIC R EVANS | Name _____ |
| Company Name   COURTENAY APPRAISAL SERVICES | Company Name _____ |
| Company Address   7597 CHALK HILL PL | Company Address _____ |
| RANCHO CUCAMONGA, CA. 91739 | _____ |
| Telephone Number   (310) 502-2862 | Telephone Number _____ |
| Email Address   eevans44@yahoo.com | Email Address _____ |
| Date of Signature and Report   02/01/2015 | Date of Signature _____ |
| Effective Date of Appraisal   01/29/2015 | State Certification # _____ |
| State Certification # | or State License # _____ |
| or State License #   AL036354 | State _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State  CA | |
| Expiration Date of Certification or License   02/08/2015 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 1421 Valencia Ave | Date of Inspection _____ |
| Pasadena, CA 91104 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $   500,000 | Date of Inspection _____ |
| LENDER/CLIENT | |
| Name  No AMC | **COMPARABLE SALES** |
| Company Name   HOURY TARTARIAN | |
| Company Address   1421 VALENCIA AVE PASADENA CA 91104 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address   houryt1@gmail.com | Date of Inspection _____ |

Form 1004UAD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Main File# 11421 | Page #11

## Additional Listings

1421
File # 1421

| FEATURE | SUBJECT | LISTING # 1 | | LISTING # 2 | | LISTING # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 1421 Valencia Ave Pasadena, CA 91104 | 1094 Sinaloa Ave Pasadena, CA 91104 | | | | | |
| Proximity to Subject | | 0.98 miles SW | | | | | |
| List Price | $                0 | $         524,900 | | $ | | $ | |
| List Price/Gross Liv. Area | $        sq.ft. | $    512.60 sq.ft. | | $        sq.ft. | | $        sq.ft. | |
| Last Price Revision Date | 09/28/2014 | JANUARY 23, 2015 | | | | | |
| Data Source(s) | | MLS #OC15016066MR | | | | | |
| Verification Source(s) | | BROOKE REALTY | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing Concessions | | ArmIth Cash;0 | | | | | |
| Days on Market | | 9 | 0 | | | | |
| Location | N;Res;Res | N;Res;Res | | | | | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | | | | |
| Site | 7,004 SF | 2,503 SF | +4,501 | | | | |
| View | N;Mtn;Res | N;Mtn;Res | | | | | |
| Design (Style) | DT1;Tudor/Avg | DT1;Cottage/Avg | 0 | | | | |
| Quality of Construction | Q4 | Q4 | | | | | |
| Actual Age | 89 | 94 | 0 | | | | |
| Condition | C4 | C3 | -20,000 | | | | |
| Above Grade | Total  Bdrms.  Baths | Total  Bdrms.  Baths | | Total  Bdrms.  Baths | | Total  Bdrms.  Baths | |
| Room Count | 5      2     1.0 | 5      5     1.0 | | | | | |
| Gross Living Area | 1,072 sq.ft. | 1,024 sq.ft. | 0 | sq.ft. | | sq.ft. | |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | | | | |
| Functional Utility | AVERAGE | AVERAGE | | | | | |
| Heating/Cooling | FAU/AC | FAU/AC | | | | | |
| Energy Efficient Items | AVERAGE | AVERAGE | | | | | |
| Garage/Carport | 2dw | 2gd2dw | -10,000 | | | | |
| Porch/Patio/Deck | PORCH/PATIO | PORCH/PATIO | | | | | |
| Balcony | NONE | NONE | | | | | |
| Fireplace/Woodstove | 1-FPL | NONE | +5,000 | | | | |
| Pool/Spa | NONE | NONE | | | | | |
| Net Adjustment (Total) | | ☐ +  ☒ - | $     -20,499 | ☐ +  ☐ - | $ | ☐ +  ☐ - | $ |
| Adjusted List Price of Comparables | | Net    3.9   % Gross   7.5   % | $    504,401 | Net        % Gross      % | $ | Net        % Gross      % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | LISTING # 1 | LISTING # 2 | LISTING # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 04/10/2014 | | |
| Price of Prior Sale/Transfer | | $420,000 | | |
| Data Source(s) | PER COUNTY RECORDS/M | PER COUNTY RECORDS/M | | |
| Effective Date of Data Source(s) | 01/30/2015 | 01/30/2015 | | |

Comments:    Mls and county records does not indicate a transfer within the past 12 months or at the time of inspection. Last Transfer Date: 07/13/2004. Sale Price: $497,000 Doc #1775210 Grant deed. Seller: Shnorhokian, Vicken. Listing Comparable 1: The previous transaction took place approx 9 months before current transaction per ndcdata. Doc #444966 Grant deed. Standard sale, this comp has been upgraded and remodeled since prior sale.

FOLLOWING AN EXTENSIVE SEARCH THROUGH THE SUBJECT'S MARKETING AREA AND DISCUSSIONS WITH AREA BROKERS, THE LISTINGS SELECTED ARE IN THE SUBJECTS NEIGHBORHOOD WITH SIMILAR CONDITION, UTILITY & AMENITIES. THE NUMBER OF ACTIVE LISTINGS IS CURRENTLY WITHIN NORMAL RANGE. ALL SALES GIVEN CONSIDERATION & THE MARKET ANALYSIS BRACKETS VALUE ARE BETWEEN $260,000.00 TO $320,000.00. THE COST ANALYSIS IS CORROBORATIVE. DUE TO LIMITED SALES OF SIMILAR TYPE PROPERTIES WITHIN A MILE OF THE SUBJECT, THE COMPS USED WERE THE BEST COMPARABLES AVAILABLE SIMILAR TO THE SUBJECT IN SIZE & LOCATION, AT THE TIME OF THE APPRAISAL. IN ORDER TO MAKE A DETERMINATION AS TO THE REASONABLENESS OF THE OPINION OF VALUE, THE APPRAISER INSPECTED THE SUBJECT & COMPARABLE SALES DESCRIBED IN THE APPRAISAL REPORT FROM THE STREET, INSPECTED THE NEIGHBORHOOD IN WHICH THE SUBJECT IS LOCATED, RESEARCHED ALL APPROPRIATE DATA, VERIFIED THE DATA IN THE APPRAISAL REPORT USING ALL RELIABLE SOURCES AND ASSUMED THE PROPERTY CONDITION REPORTED IN THE ORIGINAL APPRAISAL IS ACCURATE UNLESS THERE IS EVIDENCE TO THE CONTRARY.

NOTE: ALL UTILITIES APPEAR ON AND IN FULL WORKING ORDER AT THE TIME OF INSPECTION. HOT WATER HEATER APPEARS DOUBLE STRAPPED AT THE TIME OF INSPECTION. CO2 ALARMS & SMOKE DETECTORS WERE INSTALLED IN THE SUBJECT AT THE TIME OF INSPECTION (IN FULL WORKING ORDER). ALL REPAIRS, ALTERATION AND SUBSTANTIAL CHANGES WERE COMPLETED IN A PROFESSIONAL AND OR WORKMANLIKE MANNER. THE APPRAISER DOES NOT HAVE ANY PRIOR SERVICES COMPLETED FOR THE SUBJECT PROPERTY WITHIN THE PAST 3 YEARS. BASED UPON INTERIOR & EXTERIOR INSPECTIONS, THE SUBJECT APPEARS TO A HAVE AN ADDITIONAL INTERIOR BATH, A GARAGE CONVERSION AND AN ADDITIONAL GUEST UNIT (BEING USED AS STORAGE) W/KITCHENETTE & BATH ATTACHED TO THE REAR OF THE GARAGE THAT WAS DONE WITHOUT PERMITS. NO VALUE GIVEN TO ADDITIONAL INT. BATH, GUEST UNIT & 1-CAR GARAGE CONVERSION AT THE TIME OF THE INSPECTION (GARAGE CONV COST TO CURE APPROX $2500). ALL REPAIRS, ALTERATION & SUBSTANTIAL CHANGES WERE COMPLETED IN A PROFESSIONAL & OR WORKMANLIKE MANNER. THERE APPEARS TO BE NO HEALTH OR SAFETY HAZARDS ASSOCIATED WITH THE ADDITIONS. NOT ILLEGAL PER ZONING, CONFORMS TO THE NEIGHBORHOOD, & MAY BE REBUILT. IT IS NOT UNUSUAL FOR ASSESSOR RECORDS AND PARTICULAR IN THIS CASE TO BE INCORRECT. COUNTY RECORDS INFORMATION ARE NOT ALWAYS ACCURATE OR DEEMED RELIABLE. THE SUBJECT IS APPRAISED IN OVERALL AVG CONDITION WITH AVG OVERALL QUALITY. NO ADDITIONAL OR OTHER SPECIAL FEATURES OBSERVED. ALL SALES PROVIDE IN THIS APPRAISAL WERE THE MOST COMPARABLE PROPERTIES THAT COULD BE LOCATED-IN ALL OTHER PERTINENT ASPECTS.

BASED UPON REVIEWING THE COMPARABLE SALES IN THE AREA OF THE SUBJECT & REVIEWING THE SALES PRICE OF THE COMPS THAT WERE SIMILAR IN SIZE, LOCATION, CONDITION, AND PHYSICAL CHARACTERISTICS AS WELL AS MAKING ADJUSTMENTS BASED UPON PAIRED SALES ANALYSIS, WE ARE OF THE OPINION THAT THE VALUE IS $500,000.00 ON THIS DATE. 01/29/2015.

March 2005

# Market Conditions Addendum to the Appraisal Report

File No. 1421

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 1421 Valencia Ave | City Pasadena | State CA | ZIP Code 91104 |
|---|---|---|---|---|

| Borrower | Tartarian, Houry |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

## MARKET RESEARCH & ANALYSIS

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 10 | 6 | 5 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 1.67 | 2.00 | 1.67 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | | | 6 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | 3.6 | ☐ Declining | ☐ Stable | ☒ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | $483,500 | $491,000 | $500,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 50 | 44 | 32 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Comparable List Price | | | $529,500 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | | | 26 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale Price as % of List Price | 0.97 | 0.99 | 0.97 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☒ No | | ☐ Declining | ☐ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    SMALL SELLER CONCESSIONS ARE COMMON IN THIS MARKET. ANALYSIS OF AVAILABLE SALES INFORMATION TAKEN FROM MLS AND THE APPRAISERS PERSONAL RECORDS INDICATES THAT CONCESSIONS, WHEN OFFERED TEND TO RANGE FROM 1-10% OF TOTAL SALES PRICE AT AN AVERAGE OF 3% OVERALL.

Are foreclosure sales (REO sales) a factor in the market?    ☒ Yes    ☐ No    If yes, explain (including the trends in listings and sales of foreclosed properties).
REO SALES IN THE SUBJECTS MARKET APPEAR TO BE APPROXIMATELY 38% OF TOTAL CLOSES SALES. THIS IS BASED ON CLOSED SALES RESEARCHED THROUGH NDCDATA AND CLOSINGPOINT.COM. THE ACTUAL RATIO OF REO AND / OR SHORT SALES TO ALL SALES VARIES SLIGHTLY DEPENDING UPON THE DATA SOURCE USED. HOWEVER, OVERALL TRENDS APPEARS TO BE SIMILAR.

Cite data sources for above information.    DATA PROVIDED FROM SOUTHERN CALIFORNIA REAL ESTATE ASSOC, MLS, NDCDATA, CONVERSATIONS WITH REALTORS, LENDERS, CONTRACTORS AND MY OWN PERSONAL KNOWLEDGE OF THE AREA.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
SEASONAL SALES ACCOUNT FOR INFLUCTIONS OF PRICE. SMALL SAMPLING DOES NOT REFLECT A TREND. PROPERTY VALUES IN THE SUBJECTS MARKET AREA APPEARS TO BE INCREASING AND A SHORTAGE IN SUPPLY AND DEMAND. THE ABOVE INFORMATION SUPPORTS THE APPRAISERS CONCLUSION MENTIONED IN THE NEIGHBORHOOD SECTION OF THE APPRAISAL REPORT, PROPERTY VALUES ARE INCREASING, MARKETING TIME IS 3-6 MONTHS, SUPPLY IS AT 3.6 MONTHS.

## CONDO/CO-OP PROJECTS

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | | Project Name: | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?    ☐ Yes    ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

## APPRAISER

| Signature    *Eric R Evans* | Signature |
|---|---|
| Appraiser Name    ERIC R EVANS | Supervisory Appraiser Name |
| Company Name    COURTENAY APPRAISAL SERVICES | Company Name |
| Company Address    7597 CHALK HILL PL , RANCHO CUCAMONGA, | Company Address |
| State License/Certification #  AL036354    State  CA | State License/Certification #    State |
| Email Address    eevans44@yahoo.com | Email Address |

| Freddie Mac Form 71    March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC    March 2009 |
|---|---|---|

Main File No. 321   Page #13

## Subject Photo Page

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code 91104 |
| Lender | HOURY TARTARIAN | | | | | |



**Subject Front**

1421 Valencia Ave
Sales Price          0
Gross Living Area    1,072
Total Rooms          5
Borrower/Client      2
Client               1.0
Location             N;Res;Res
View                 N;Mtn;Res
Site                 7,004 SF
Quality              Q4
Age                  89



**Subject Rear**



**Subject Street**

Main File No.1421  Page #14

**Photograph Addendum**

| Borrower/Client | Tartarian, Houry | | | | |
|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | |
| City | Pasadena | County | LOS ANGELES | State CA | Zip Code 91104 |
| Lender | HOURY TARTARIAN | | | | |



**KITCHEN**



**LIVING ROOM W/FPL**



**DINING ROOM**



**OFFICE**



**BEDROOM**



**BEDROOM**



**BATH**



**LAUNDRY ROOM**



**BATH (Not Permitted)**



**STORAGE**



**DRIVEWAY**



**EAST ELEVATION**

**Photograph Addendum**

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code 91104 |
| Lender | HOURY TARTARIAN | | | | | |



**HOT WATER HEATER**



**CO2 ALARM**



**SMOKE DETECTOR**



**AERIAL VIEW**



**PROPERTY MAP**



**LOCATION MAP**



**1-CAR GARAGE**



**GUEST UNIT**



**PATIO**



**KITCHENETTE**



**BATH**

**GARAGE CONVERSION**

## Comparable Photo Page

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code | 91104 |
| Lender | HOURY TARTARIAN | | | | | |



### Comparable 1

1763 E Elizabeth St

| | |
|---|---|
| Prox. to Subject | 0.86 miles W |
| Sales Price | 540,000 |
| Borrower/Client | 1,446 |
| Client | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res;Res |
| View | N;Mtn;Res |
| Site | 7,891 SF |
| Quality | Q4 |
| Age | 70 |



### Comparable 2

1811 Beverly Dr

| | |
|---|---|
| Prox. to Subject | 0.78 miles W |
| Sales Price | 441,500 |
| Gross Living Area | 824 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res;Res |
| View | N;Mtn;Res |
| Site | 6,795 SF |
| Quality | Q4 |
| Age | 90 |



### Comparable 3

2063 Jefferson Dr

| | |
|---|---|
| Prox. to Subject | 0.47 miles W |
| Sales Price | 591,000 |
| Gross Living Area | 1,000 |
| Total Rooms | 5 |
| Total Bedrooms | 2 |
| Total Bathrooms | 1.0 |
| Location | N;Res;Res |
| View | N;Mtn;Res |
| Site | 4,076 SF |
| Quality | Q4 |
| Age | 88 |

Main File No.21 | Page #17

## Listing Photo Page

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code | 91104 |
| Lender | HOURY TARTARIAN | | | | | |



### Listing 1

| | |
|---|---|
| 1094 Sinaloa Ave | |
| Proximity to Subject | 0.98 miles SW |
| List Price | 524,900 |
| Borrower/Client | 9 |
| Client | 1,024 |
| Total Rooms | 5 |
| Total Bedrooms | 5 |
| Total Bathrooms | 1.0 |
| Age | 94 |

### Listing 2

| | |
|---|---|
| Proximity to Subject | |
| List Price | |
| Days on Market | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Age | |

### Listing 3

| | |
|---|---|
| Proximity to Subject | |
| List Price | |
| Days on Market | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Age | |

Main File No 3421 | Page #18

**Location Map**

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code | 91104 |
| Lender | HOURY TARTARIAN | | | | | |



Main File MCS421    Page #19

# Plat Map

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code 91104 |
| Lender | HOURY TARTARIAN | | | | | |



Main File No.1421  Page #20

## Zoning Map

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code | 91104 |
| Lender | HOURY TARTARIAN | | | | | |



| Borrower/Client | Tartarian, Houry | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | | |
| City | Pasadena | County | LOS ANGELES | | State | CA | Zip Code  91104 |
| Lender | HOURY TARTARIAN | | | | | | |

## EXHIBITS

## Exhibit 1: Requirements – Condition and Quality Ratings Usage

Appraisers must utilize the following standardized condition and quality ratings within the appraisal report.

### Condition Ratings and Definitions

**C1**: The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

*Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

**C2**: The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

**C3**: The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

**C4**: The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

**C5**: The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability are somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

**C6**: The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

UAD Field-Specific Standardization Requirements          Page 35 of 38          Document Version 1.4

**UAD Definitions List Pg 2**

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code 91104 |
| Lender | HOURY TARTARIAN | | | | | |

## EXHIBITS

### Quality Ratings and Definitions

**Q1**
Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**
Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

**Q3**
Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**
Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**
Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**
Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

UAD Field-Specific Standardization Requirements          Page 36 of 38          Document Version 1.4

UAD Definitions List Pg 3

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code 91104 |
| Lender | HOURY TARTARIAN | | | | | |

## EXHIBITS

## Exhibit 2: Requirements – Definitions of Not Updated, Updated, and Remodeled

### Not Updated

**Little or no updating or modernization. This description includes, but is not limited to, new homes.**

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

### Updated

**The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.**

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do *not* include significant alterations to the existing structure.

### Remodeled

**Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.**

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

Form MAP.PLAT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

UAD Definitions List Pg 4

| Borrower/Client | Tartarian, Houry | | | | |
|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | |
| City | Pasadena | County LOS ANGELES | State CA | Zip Code 91104 | |
| Lender | HOURY TARTARIAN | | | | |

## EXHIBITS

### Exhibit 3: Requirements – Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Appropriate Fields |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Administration | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA –Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Department of Veterans Affairs | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

UAD Field-Specific Standardization Requirements          Page 38 of 38          Document Version 1.4

**E & O**

| Borrower/Client | Tartarian, Houry | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code | 91104 |
| Lender | HOURY TARTARIAN | | | | | |



General Star National Insurance Company
P O Box 10360 (Attn:  GSN)
Stamford, Connecticut 06904

### REAL ESTATE APPRAISERS ERRORS & OMISSIONS INSURANCE POLICY

#### DECLARATIONS PAGE

This is a claims made and reported policy. Please read this policy and all endorsements and attachments carefully.

Policy Number:  NJA313241                     Renewal of Number:

1. NAMED INSURED:    Eric Evans
   STREET ADDRESS:
             7597 Chalk Hill Place
             Rancho Cucamonga, CA 91739

2. POLICY PERIOD:   Inception Date:  10/10/2014          Expiration Date:  10/10/2015
             Effective 12:01 a.m. Standard Time at the address of the Named Insured.

3. LIMITS OF LIABILITY:
        Each Claim:  $1,000,000
        Aggregate:   $1,000,000
     Claim Expenses have a separate Limit of Liability:
        Each Claim:  $1,000,000
        Aggregate:   $1,000,000

4. DEDUCTIBLE:        Each Claim: $0_____   Aggregate: $0_____

5. RETROACTIVE DATE:   10/10/2014
             If a date is indicated, this policy will not provide coverage for any Claim arising out of any act, error,
             omission or personal injury which occurred before such date.

6. ANNUAL PREMIUM:            $697.00


   TOTAL Premium and Taxes/Surcharge :      $697.00
7. ENDORSEMENTS:
   This policy is made and accepted subject to the printed policy form together with the following form(s) or
   endorsement(s).
    AP 00 0001 (06/11), AP 04 0001 (06/11),  AP 21 0002 (06/11),  AP 27 0004 (06/11),  AP 01 0004CA (06/11),
    AP 20 0001 (06/11), AP 08 0005CA (06/2011),

8. PRODUCER NAME:    Mercer Consumer
   STREET ADDRESS:  P. O. Box 8146
             Des Moines, IA 50306-8146


                                                    _Croni Moore_
                                                    Authorized Representative
   Producer Code: 26460          Class Code: 73128
   Date:    10/14/2014
   AP 10 0001 06 11      © Copyright 2011, General Star Management Company, Stamford, CT      Page 1 of 1

**Appraisal License**

| Borrower/Client | Tartarian, Houry | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 1421 Valencia Ave | | | | | | |
| City | Pasadena | County | LOS ANGELES | State | CA | Zip Code | 91104 |
| Lender | HOURY TARTARIAN | | | | | | |



# EXHIBIT "5"

**This page is part of your document - DO NOT DISCARD**

**04 1775210**

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**07/13/04 AT 08:00am**

TITLE(S) : *Deed*



L E A D   S H E E T

**FEE**

| FEE $30 | Z |
|---------|---|
| A.F.N.F. 94 | 2 |

**CODE**
**20**

**CODE**
**19**

**CODE**
**9**

**D.T.T**
546.

NOTIFICATION SENT 54

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

5853·020·011    001

**THIS FORM NOT TO BE DUPLICATED**

LOS ANGELES,CA                Page 1 of 3                Printed on 11/23/2010 10:13:20 AM
Document: D 2004.1775210

7/13/04

# Equity Title

04 1775210

2

RECORDING REQUESTED BY:
Equity Title

AND WHEN RECORDED MAIL TO:

Hourig Tarterian  TARTARIAN
1421 Valencia Avenue
Pasadena, CA 91104

THIS SPACE FOR RECORDER'S USE ONLY:

| Title Order No.: LA0472846 | | Escrow No.: 100424-TS |
|---|---|---|

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
**DOCUMENTARY TRANSFER TAX is $546.70**

[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[X] Unincorporated area   [ ] City of **AND**

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**VICKEN SHNORHOKIAN, A MARRIED MAN, AS HIS SOLE AND SEPARATE PROPERTY**

hereby GRANT(s) to:

**HOURIG TARTERIAN**
TARTARIAN, AN UNMARRIED WOMAN
the real property in the County of Los Angeles, State of California, described as:
Lot 84 of Tract No. 6433,, County of Los Angeles, State of California, as per Map recorded in Book 104, Page 20
of Maps, in the Office of the County Recorder of said County.
Also Known as: 1421 Valencia Avenue, Pasadena, CA 91104
AP#: 5853-020-011

**DATED June 18, 2004**
STATE OF CALIFORNIA
COUNTY OF _Los Angeles_
On _July 7th, 2004_
Before me, _La-Tasha Richmond_
A Notary Public in and for said State, personally appeared
_Vicken Shnorhokian_

Vicken Shnorhokian

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

LA-TASHA RICHMOND
COMM. #1290594
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. Jan. 13, 2005
ES11

Signature _La Tasha Richmond_          (This area for official notarial seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

3

# ILLEGIBLE NOTARY SEAL DECLARATION

## GOVERNMENT CODE 27362.7

**I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:**

Name of Notary    _La-Tasha Richmond_

Date Commission Exp    _Jan 13 2005_

Notary Identification Number    _1290594_
**(For Notaries commissioned after 1/01/1992)**

Manufacturer/Vender Identification Number    _E 511_

Place of Execution of this Declaration    _Norwalk_ .

Date _____7 / 13 / __**04**_____

_____
**Signature**

04  1775210

# EXHIBIT "6"



**This page is part of your document - DO NOT DISCARD**

 **20071314107**  **Pages: 021**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/31/07 AT 08:00AM**

| Fee: | 70.00 |
|---|---|
| Tax: | 0.00 |
| Other: | 0.00 |
| Total: | 70.00 |

**Title Company**

**TITLE(S) :**



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**



COMMONWEALTH LAND TITLE CO.

Recording Requested By:
**GINA BLANCO**

Return To:

**National City Bank**
**P.O. Box 8800**
**Dayton, OH 45401-8800**

5853 020-011

Prepared By:
**GINA BLANCO**

**National City Bank**
**P.O. Box 8800**
**Dayton, OH 45401-8800**

05/31/07

20071314107

0005604353

5078209-10

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    May 22, 2007
together with all Riders to this document.
**(B) "Borrower"** is

**HOURIG TARTARIAN An Unmarried Woman**

Borrower's address is    **1421 VALENCIA AVENUE PASADENA, California 91104**
. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **National City Mortgage a division of**
**National City Bank**
Lender is a    **National Banking Association**
organized and existing under the laws of    **United States**

**CALIFORNIA** -Single Family- Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3005 1/01

-6(CA) (0207)
Page 1 of 15    Initials:
VMP MORTGAGE FORMS - (800)521-7291

3

Lender's address is
3232 NEWMARK DRIVE, MIAMISBURG, OH  45342
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee" is    NATIONAL CITY BANK**

**(E) "Note"** means the promissory note signed by Borrower and dated  **May 22, 2007**
The Note states that Borrower owes Lender
**FIVE HUNDRED THIRTEEN THOUSAND SEVEN HUNDRED FIFTY & 00/100**                     Dollars
(U.S. $        **513,750.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than        **June 1, 2037**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

07 1314107

-6(CA) (0207)                          Page 2 of 15              Initials: HT              Form 3005  1/01

4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **Los Angeles** :

[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]


**SEE ATTACHED LEGAL DESCRIPTION**


SEE EXHIBIT A


Parcel ID Number:    5853-020-011                         which currently has the address of
                     1421 VALENCIA AVENUE,                                              [Street]
                     PASADENA
                                                  [City] , California    91104    [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

07 1314107

-6(CA) (0207)          Page 3 of 15          Initials          Form 3005  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

07 1314107

-6(CA) (0207)                    Page 4 of 15              Initials: HCT                    Form 3005  1/01

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

7

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to

07
1314107

-6(CA) (0207)          Page 6 of 15          Initials: H.T.          Form 3005  1/01



the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6(CA) (0207)          Page 7 of 15          Initials ___          Form 3005  1/01

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

-6(CA) (0207)    Page 8 of 15    Initials:    Form 3005  1/01

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

-6(CA) (0207)    Page 9 of 15    Initials: HCC    Form 3005  1/01

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall

-6(CA) (0207)    Page 10 of 15    Initials: HT    Form 3005  1/01

not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

-6(CA) (0207)                    Page 11 of 15              Initials: HT              Form 3005  1/01

13

notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

07
1314107

-6(CA) (0207)    Page 12 of 15    Initials: [signature]    Form 3005 1/01

14

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

07
1314107

-6(CA) (0207)                Page 13 of 15            Initials #CT            Form 3005  1/01

15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                HOURIG TARTARIAN      -Borrower

_____                    _____ (Seal)
                                                                     -Borrower

_____ (Seal)                 _____ (Seal)
                  -Borrower                                          -Borrower

_____ (Seal)                 _____ (Seal)
                  -Borrower                                          -Borrower

_____ (Seal)                 _____ (Seal)
                  -Borrower                                          -Borrower

07 1314107

VMP -6(CA) (0207)                    Page 14 of 15                    Form 3005  1/01

16

State of California
County of LOS ANGELES                                    } ss.

On MAY 22nd, 2007  before me, GARABET K. MOUMDJIAN, A NOTARY PUBLIC
                                                     personally appeared

HOURIG TARTARIAN,

personally known to me

or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____ (Seal)

07
1314107

-6(CA) (0207)              Page 15 of 15         Initials: ___        Form 3005  1/01

17

"EXHIBIT A"

LEGAL DESCRIPTION

Lot 84 of Tract No. 6433, in the County of Los Angeles, State of California, as per Map recorded in Book 104, Page 20 of Maps, in the Office of the County Recorder of said County.

07 1314107

0005604353

18

# ADJUSTABLE RATE RIDER
### (6-Month LIBOR Index - Rate Caps)
### (Assumable after Initial Period) (45 Day Lookback)

THIS ADJUSTABLE RATE RIDER is made this 22nd    day of    May 2007
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to

**National City Mortgage a division of National City Bank**

(the "Lender") of the same date and covering the property described in the Security
Instrument and located at:

**1421 VALENCIA AVENUE , PASADENA , California 91104**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY
ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of    6.750    %. The Note
provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The interest rate I will pay may change on the first day of    June 2012
and may change on that day every sixth month thereafter. Each date on which my interest
rate could change is called a "Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an index. The
"Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of
interbank offered rates for six-month U.S. dollar-denominated    deposits in the London

**MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable after
Initial Period) (45 Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT
Form 5124 5/04**

VMP®-174R (0406)

Page 1 of 4        Initials: HT
VMP Mortgage Solutions, Inc.
(800)521-7291

07 1314107

*19*

market, as published in <u>The Wall Street Journal</u> . The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO AND 3/4THS                          percentage point(s) (    2.750              %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.750        % or less than    2.750              %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than        ONE                                percentage point(s) (    1.000              %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than    11.750        %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written

07 1314107

Initials: _HT_

VMP-174R (0406)    Page 2 of 4    Form 5124 5/04

i

consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

-174R (0406)                    Page 3 of 4            Initials: _____        Form 5124 5/04

2l

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
HOURIG TARTARIAN        -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                        -Borrower                                  -Borrower


VMP-174R (0406)                    Page 4 of 4                    Form 5124 5/04


07 1314107



**This page is part of your document - DO NOT DISCARD**

 **20080099748**    Pages: 002

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

Fee: 9.00
Tax: 0.00
Other: 0.00

**01/17/08 AT 08:57AM**

Total: 9.00

1568794    200801170100019    Mail

# TITLE(S) :



L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

E47R383    **THIS FORM IS NOT TO BE DUPLICATED**

This Instrument Prepared By:
Harish Penakacherla

After Recording Return To:
National City Mortgage
P.O. Box 8800        Dayton,
OH  45401-8800

01/17/08



20080099748

Parcel:

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NCM#: 5604353                                          TARTARIAN, HOURIG

MIN and MERS Phone:                          Recording District: Los Angeles

## ASSIGNMENT OF Deed of Trust

For value received, the undersigned, hereby grants, assigns and transfers to:  National City Mortgage Co., a
subsidiary of National City Bank located at  3232 Newmark Drive, Miamisburg, OH  45342, all beneficial interest
under that certain Deed of Trust dated 5/22/2007 executed by:

**Trustor(s)    HOURIG TARTARIAN**

to NATIONAL CITY BANK for "NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY
BANK", in the amount of: "513,750", recorded 5/31/2007 as  Instrument No.: 20071314107 in Book/Volume:
Page:  of the Official Records of Los Angeles County, California describing the land therein:

Property Address:    **1421 VALENCIA AVE, PASADENA, CA  91104**

**Legal Description As Per Deed of Trust Referred To Herein**

Together with the Note or Notes therein described or referenced to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Deed of Trust.

**National City Mortgage, a division of National City
Bank**

Jeff Blum, Supervisor

State of OHIO        County of MONTGOMERY

On 12/5/2007 before me, Christa Dahlinghaus the undersigned, a Notary Public in and for the State of OHIO,
personally appeared Jeff Blum, Supervisor of National City Mortgage, a division of National City Bank personally
known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he
executed the same in his authorized capacity, and that for his signature on the instrument the person, or the entity
upon behalf of which he acted, executed the instrument.

*Christa D. Dahlinghaus*

Christa Dahlinghaus, Notary Public in and for the State of OHIO
My Commission Expires: 7/2/2011    My County of Residence: MONTGOMERY

CHRISTA DAHLINGHAUS, Notary Public
In and for the State of Ohio
My Commission Expires July 2, 2011

**This page is part of your document - DO NOT DISCARD**



# 20091650380

**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**11/02/09 AT 08:00AM**

| | |
|---|---:|
| FEES: | 15.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 15.00 |



**L E A D S H E E T**



200911020210010

00001437206



002382913

**SEQ:**
**01**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**                    r20

LOS ANGELES,CA                         Page 1 of 3                    Printed on 11/23/2010 10:13:19 AM
Document: TD 2009.1650380

RECORDING REQUESTED BY:
ServiceLink

AND WHEN RECORDED MAIL TO:



11/02/2009

*20091650380*

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

SPACE ABOVE THIS LINE FOR RECORDER'S USE

 

## SUBSTITUTION OF TRUSTEE

LOAN NO:XXXXXX4353                    T.S. NO.:1218744-11

WHEREAS, HOURIG TARTARIAN AN UNMARRIED WOMAN was the original Trustor, NATIONAL CITY BANK was the original Trustee, and NATIONAL CITY MORTGAGE A DIVISION OF NATIONAL CITY BANK was the original Beneficiary under that certain Deed of Trust dated May 22, 2007 and recorded on May 31, 2007 as Instrument No. 20071314107, in book XX, page XX of Official Records of LOS ANGELES County, California, and

WHEREAS, the undersigned is present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in the place and stead of present Trustee thereunder, in the manner in said Deed of Trust provided.

NOW, THEREFORE, the undersigned hereby substitutes, CAL-WESTERN RECONVEYANCE CORPORATION a California Corporation whose address is 525 EAST MAIN STREET, P.O. BOX 22004, EL CAJON CA 92022-9004 as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:6/02/2009                    NATIONAL CITY BANK BY CAL-WESTERN
                                   RECONVEYANCE CORPORATION AS ATTORNEY-IN-
                                   FACT

                                   Joe Krasovic, A.V.P.

State of CALIFORNIA )
County of SAN DIEGO)
On 6/02/2009 before me,    Mary J. Statham
a Notary Public, personally appeared    Joe Krasovic    , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal                         (Seal)

Signature                                    MARY J. STATHAM
                                             COMM. # 1646046
                                             NOTARY PUBLIC-CALIFORNIA
                                             SAN DIEGO COUNTY
                                             My Comm. Exp. Feb. 18, 2010

SUBCA.DOC                    Rev. 09/15/09                    Page 1 of 1



3

T.S NO. 1218744-11

LOAN NO. XXXXXX 4353

## AFFIDAVIT OF MAILING SUBSTITUTION OF TRUSTEE
### PURSUANT TO CALIFORNIA CIVIL CODE §2934a

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

THE UNDERSIGNED BEING SWORN, SAY(S):

A COPY OF THE SUBSTITUTION OF TRUSTEE HAS BEEN MAILED, PRIOR TO OR CONCURRENTLY WITH THE RECORDING THEREOF, IN THE MANNER PROVIDED IN SECTION 2934a OF THE CIVIL CODE OF CALIFORNIA, TO ALL PERSONS TO WHOM A COPY OF THE NOTICE OF DEFAULT WOULD BE REQUIRED TO BE MAILED BY THE PROVISIONS OF SUCH SECTION.

Dated: OCT 2 7 2009

_Ashley Frank_
Ashley Frank

State of California
County of San Diego

On October 27, 2009 before me, Jeffrey Starling, a Notary Public, personally appeared Ashley Frank, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                    (Seal)

Signature _Jeffrey Starling_

JEFFREY STARLING
COMMISSION # 1858755
Notary Public - California
SAN DIEGO COUTY
My Comm. Expires Jul. 24, 2013

ASUB.DOC                                                              Rev. 10/02/09
                        Cal-Western Reconveyance Corporation
        525 East Main Street, El Cajon, California 92020 •P.O. Box 22004, El Cajon, California 92022-9004
                TEL: (619) 590-9200 •FAX: (619) 590-9299 • Website: www.cwrc.com

# EXHIBIT "7"

**This page is part of your document - DO NOT DISCARD**





## 20071314108

**Pages: 010**



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**05/31/07 AT 08:00AM**

| | |
|---|---|
| Fee: | 46.00 |
| Tax: | 0.00 |
| Other: | 0.00 |
| Total: | 46.00 |

**Title Company**



**TITLE(S) :** _____



L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**     **Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**



COMMONWEALTH LAND TITLE CO.

Recording Requested By:

GINA BLANCO
Return To:

National City Bank
P.O. Box 8800
Dayton, OH 45401-8800

Prepared By:

5853-020-011

5078209-10

**05/31/07**

**20071314108**

0005604362

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

THIS DEED OF TRUST is made this    22    day of    May    2007    , among the Trustor,
HOURIG TARTARIAN An Unmarried Woman

, whose address is

1425 VALENCIA AVENUE PASADENA, California 91104

(herein "Borrower"),

NATIONAL CITY BANK                                          (herein "Trustee"), and the Beneficiary,
National City Mortgage a division of
National City Bank
a    National Banking Association                              organized and existing under the laws of
United States                                               , whose address is
3232 NEWMARK DRIVE, MIAMISBURG, OH 45342                     (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys
to Trustee, in trust, with power of sale, the following described property located in the County of    Los Angeles
, State of California:

SEE ATTACHED LEGAL DESCRIPTION

Balloon Rider attached

Parcel ID Number:
which has the address of    1421 VALENCIA AVENUE                                              [Street]
PASADENA                    [City], California    91104    [ZIP Code] (herein "Property Address");

CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

NATL076(CA)  (0510)                    Form 3805
Page 1 of 7                            Amended 9/99
                                       Initials: HT
VMP Mortgage Solutions, Inc

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **May 22, 2007** and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ **99,250.00**, with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **June 1, 2022**; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender

NATL076(CA) (0510)    Page 2 of 7    Initials    Form 3805

4

and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall

NATL076(CA)  (0510)                                    Page 3 of 7                                    Initials: HI      Form 3805

07 1314108

5

not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

Initials: HI

NATL076(CA)  (0510)                          Page 4 of 7                          Form 3805

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender and the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____ , in Book _____
, Page _____    _____ County, or filed for record with recorder's serial number _____ , records of    **Los Angeles** County, California, executed by

**HOURIG TARTARIAN An Unmarried Woman**

as trustor (or mortgagor) in which **National City Mortgage a division of**
**National City Bank**
is named as beneficiary (or mortgagee) and

be mailed to    **NATIONAL CITY BANK**    as trustee
at

07
1314108

NATL076(CA)   (0510)    Page 5 of 7    Initials: _____    Form 3805

7

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____
Lender Representative

State of California
County of LOS ANGELES
On MAY 22nd, 2007 ___ __ ___, before me, GARABET K. MOUMDJIAN, A NOTARY PUBLIC, personally appeared

HOURIG TARTARIAN _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)          _____ (Seal)
HOURIG TARTARIAN        -Borrower                          -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                          -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                          -Borrower

_____ (Seal)          _____ (Seal)
                        -Borrower                          -Borrower

*[Sign Original Only]*

07 1314108

NATL076(CA)  (0510)                    Page 6 of 7                    Form 3805

State of California
County of *LOS ANGELES* } ss.

On *MAY 22nd, 2007*, before me, *GARABET K. MOUMDJIAN, A NOTARY PUBLIC*,
*HOURIG TARTARIAN*
personally appeared

~~personally known to me~~

(or) proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

(This area for official notarial seal)

_Garabet Moumdjian_ _____ (Seal)

GARABET K. MOUMDJIAN
Commission # 1640434
Notary Public - California
Los Angeles County
My Comm. Expires Jan 23, 2010

07 1314108

NATL076(CA)    (0510)

Page 7 of 7

Initials: _HT_

Form 3805

9

## BALLOON RIDER TO MORTGAGE, DEED OF TRUST OR SECURITY DEED

0005604362

Date **May 22 , 2007**

1. BORROWER(S)    **HOURIG TARTARIAN**
Property Address  **1421 VALENCIA AVENUE**
                  **PASADENA California 91104**

2. **DEFINED TERMS; RIDER A PART OF THE SECURITY INSTRUMENT.** "Rider " means this Balloon Rider to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to **National City Mortgage** , a division of National City Bank ("the Lender") and which is dated the same date as this Rider. The Security Instrument secures the Fixed Rate Note and Security Agreement ("Note") and which covers the property described therein located at the address set forth above. The term "the Lender" includes Lender's successors and assigns. In the event there are any conflicts between this Rider and the Security Instrument the provisions of the Rider will control.

3. **BALLOON NOTE.** The final payment due on the Maturity Date of the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. The Note is commonly called a "balloon note."

4. **BALLOON NOTE AGREEMENT.** Borrower(s) understand and agree as follows:

**THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE NOTE AND SECURITY INSTRUMENT. THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. THE BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT THE BORROWER MAY OWN, OR THE BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER THE BORROWER HAS THIS LOAN WITH, WILLING TO LEND THE BORROWER THE MONEY. IF THE BORROWER REFINANCES THIS LOAN AT MATURITY, THE BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.**

5. **SIGNATURES.** BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS RIDER.

**HOURIG TARTARIAN**
Type or print name                                      X_____
                                                         Signature

_____                         X_____
Type or print name                                       Signature

_____                         X_____
Type or print name                                       Signature

_____                         X_____
Type or print name of                                    Signature

©2006 National City Corporation
BALNRDR (06/06)

07 1314108

10

"EXHIBIT A"

LEGAL DESCRIPTION

Lot 84 of Tract No. 6433, in the County of Los Angeles, State of California, as per Map recorded in Book 104, Page 20 of Maps, in the Office of the County Recorder of said County.

07 1314108



**This page is part of your document - DO NOT DISCARD**



## 20100846565



Pages:
0003

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**06/21/10 AT 02:11PM**

|  |  |
|---|---|
| FEES: | 27.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 27.00 |



**L E A D S H E E T**



201006210020062

00002538523

002739742

**SEQ:
01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

Recording requested
by (and when recorded
return to):

Nationwide Title Clearing
Attn: Jessica Fretwell
2100 Alt 19 North
Palm Harbor, FL 34683



06/21/2010

*20100846565*

(This space for recorder's use only)

## ASSIGNMENT OF MORTGAGE AND PROMISSRY NOTE
*Title of Document*

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Gov't. Code 27361.6)
(Additional recording fee applies)

3

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO:
WMD Capital Markets, LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683
WMDAS DBI-II L#: DBI-072766

DBI-072766

## ASSIGNMENT OF MORTGAGE AND PROMISSORY NOTE

FOR VALUE RECEIVED, PNC BANK, National Association, 3232 Newmark Drive, Miamisburg, Oh. 45342 hereby sells, transfers, sets over, and assigns to:

*Greenwich Investors XXXIII LLC*
*1187 Coast Village Rd*
*Ste 1 #524*
*Santa Barbara CA 93108*

PNC BANK, National Association's entire right, title, and interest in and to the following described mortgage (the Mortgage) and promissory note (the Promissory Note) which are dated 5/22/2007 ,and are in the original principal amount of $ 99,250.00. The Mortgage is described and identified by the following name(s) of the mortgagor(s), the date of recording, instrument number, and/or book number as recorded in LOS ANGELES County, CA.

| MORTGAGOR(S) | INSTRUMENT NUMBER | BOOK & PAGE |
|---|---|---|
| HOURIG TARTARIAN *1421 Valencia Ave Pasadena CA 91104* | 2007131*4108 | *on 5/31/07* |

IN TESTIMONY WHEREOF, said PNC BANK, National Association , has hereunto set its hands this date, November 13, 2009.

WITNESS:

PNC BANK, National Association
SUCCESSOR TO NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK

JOHN KEY

BY:

Name MICHELE FISHER
LOAN SUPPORT SPECIALIST II

TERESA TOOHEY

On this date, November 13, 2009 before me, the undersigned, a Notary Public in and for said County and State, personally appeared MICHELE FISHER, the LOAN SUPPORT SPECIALIST II for an on behalf of PNC BANK, National Association and duly authorized to do so acknowledged the execution of the foregoing Assignment of Mortgage and Promissory Note as its voluntary act and deed for the uses and purposes therein contained.

BILLIE J CATLIN
Notary Public

My Commission Expires: 04/03/2013

My County of Residence: MONTGOMERY

This Instrument Prepared by:   PNC BANK, National Association

Return To: PNC BANK, National Association



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**315 West Arden Avenue Suite 28**
**Glendale, CA 91203**

A true and correct copy of the foregoing document entitled (*specify*): __**Debtor's Motion to Avoid Junior Lien on Principal**
**Residence**__ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __**3/4/2015**__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

    Kathy A Dockery (TR)    efiling@CH13LA.com
    Tamar Terzian    terzian@kingobk.com, cynthia@kingobk.com
    United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
    Gagan G Vaideeswaran    ecfcacb@piteduncan.com, GGV@ecf.inforuptcy.com

    ☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**: On (*date*) __3/4/2015__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

    **Hon. Neil Bason**
    **US Bankruptcy Judge**
    **255 E. Temple Street #1552**
    **Los Angeles, CA 90012**

    ☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

    ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 3/5/2015 | Cynthia Meza | /s/Cynthia Meza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012        Page 4        **F 4003-2.4.JR.LIEN.MOTION**

## II. SERVED BY UNITED STATES MAIL, CERTIFIED MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):

*(Attached page to Proof of Service of Document-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| | | |
|---|---|---|
| 1st lienholder *(name and address)*<br> **PNC Mortgage a division of PNC Bank, N.A.**<br>**Attn: Bankruptcy**<br>**3232 Newmark Drive**<br>**Miamisburg, OH 45342** | Address from:<br>☒ Proof of Claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail - 70140510000099802060<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 1st lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**PNC Bank, National Association**<br>**Headquarters**<br>**222 Delaware Avenue**<br>**Wilmington, DE 19899** | Address from:<br>☐ Proof of Claim  ☐ Secretary of State<br>☒ FDIC website  ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail - 70140510000051070605<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 1st lienholder *(name)* and Servicing Agent *(name and address)*<br>**CSC-Lawyers Inc. Service**<br>**50 West Board Street #1800**<br>**Columbus, OH 43216** | Address from:<br>☐ Proof of Claim  ☒ Secretary of State<br>☐ FDIC website  ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail - 70140510000099801940<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

| | | |
|---|---|---|
| 2nd lienholder *(name and address)*<br> **PNC Mortgage**<br>**6 N. Main Street**<br>**Dayton, OH 45402** | Address from:<br>☐ Proof of Claim  ☐ Secretary of State<br>☐ FDIC website  ☒ Other: *specify*  **Credit Report** | Delivery Method<br>☐ US Mail<br>☒ Certified Mail - 70140510000051045900<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 2nd lienholder *(name)* and Agent for Service of Process *(name and address)*<br>**PNC Bank, N.A.**<br>**Attn: William S. Demchak, Chairman, President and Chief Executive Officer**<br>**One PNC Plaza**<br>**Pittsburgh, PA 15222** | Address from:<br>☐ Proof of Claim  ☐ Secretary of State<br>☐ FDIC website  ☒ Other: *specify*<br>**Corporate Website** | Delivery Method<br>☐ US Mail<br>☒ Certified Mail -70140510000051045917<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 2nd lienholder *(name)* and Servicing Agent *(name and address)*<br>**PNC Bank, National Association**<br>**Headquarters**<br>**222 Delaware Avenue**<br>**Wilmington, DC 19899** | Address from:<br>☐ Proof of Claim  ☐ Secretary of State<br>☒ FDIC website  ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☒ Certified Mail - 70140510000051070605<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

| | | |
|---|---|---|
| 3rd lienholder *(name and address)* | Address from:<br>☐ Proof of Claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| 3rd lienholder *(name)* and Agent for Service of Process *(name and address)* | Address from:<br>☐ Proof of Claim  ☐ Secretary of State<br>☐ FDIC website  ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail - |

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**F 4003-2.4.JR.LIEN.MOTION**

| | | Tracking# _____<br>☐ Overnight Mail -<br>Tracking# _____<br>Carrier Name: |
|---|---|---|
| 3rd lienholder *(name)* and Servicing Agent<br>*(name and address)* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking# _____<br>☐ Overnight Mail -<br>Tracking# _____<br>Carrier Name: |

| | | |
|---|---|---|
| Alternative/Additional Address<br>*(name and address)* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking# _____<br>☐ Overnight Mail -<br>Tracking# _____<br>Carrier Name: |
| Alternative/Additional Address<br>*(name and address)* | Address from:<br>☐ Proof of Claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking# _____<br>☐ Overnight Mail -<br>Tracking# _____<br>Carrier Name: |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                    Page 6                        **F 4003-2.4.JR.LIEN.MOTION**